# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS,
# SAN ANTONIO DIVISION

| | |
|---|---|
| Richard Brewer, Jean Carol Lane, And the Texas Division, Sons of Confederate Veterans, Inc., Plaintiffs, <br><br> v. <br><br> Ron Nirenberg, In His Official Capacity as Mayor of the City of San Antonio, and Roberto Trevino, William Shaw, Rebecca Viagran, Rey Saldana, Shirley Gonzales, Greg Brockhouse, Ana Sandoval, Manny Pelaez, John Courage, and Clayton Perry, In Their Official Capacities as Members of the San Antonio City Council, Defendants. | Civil Action No. 5:17-cv-00837 |

## PLAINTIFFS' ORIGINAL COMPLAINT
## & APPLICATION FOR INJUNCTIVE RELIEF

### A. PARTIES

1. Plaintiff, Richard Brewer, is an individual and a citizen of the State of Texas.

2. Plaintiff, Jean Carol Lane, is an individual and a citizen of the State of Texas.

3. Plaintiff, Texas Division, Sons of Confederate Veterans, Inc., is a non-profit corporation that is organized under the laws of the State of Texas.

4. Defendant, Ron Nirenberg, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the Mayor. *See* Fed. R. Civ. P. 4(j)(2)(A).

5. Defendant, Roberto Trevino, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

6. Defendant, William Shaw, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

7. Defendant, Rebecca Viagran, is an officer of the City of San Antonio and is being sued in his official capacity. She may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

8. Defendant, Rey Saldana, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

9. Defendant, Shirley Gonzales, is an officer of the City of San Antonio and is being sued in his official capacity. She may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

10. Defendant, Greg Brockhouse, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

11. Defendant, Ana Sandoval, is an officer of the City of San Antonio and is being sued in his official capacity. She may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

12. Defendant, Manny Pelaez, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

13. Defendant, John Courage, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

14. Defendant, Clayton Perry, is an officer of the City of San Antonio and is being sued in his official capacity. He may be served by serving the Office of the City Council. *See* Fed. R. Civ. P. 4(j)(2)(A).

## B. JURISDICTION

15. The Court has jurisdiction over the lawsuit, because the suit arises under Amendments I and XIV, Sec. 1, of the U.S. Constitution. "Congress shall make no law . . . abridging the freedom of speech.". . . "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331. *Gunn v. Minton*, 133 S.Ct. 1059,

1064 (2013); *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005).

16. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiffs' claims for title to the land under the Confederate Monument by adverse possession and possession of an easement for the Confederate Monument under the doctrine of estoppel *en pais*, because plaintiffs' claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution. The imminent threat of the removal of the Confederate Monument gives rise to the abridgment of the constitutional guarantee of free speech. The threatened monument remove also gives rise to the claims of land ownership of the Monument by adverse possession and an easement by estoppel. Since the state claims and the federal claim arise from the same nucleus of facts, the threatened removal of the Monument, supplemental jurisdiction over the state claims is proper. *Exxon Mobil*, 545 U.S. at 558; *see City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 167 (1997).

### C. VENUE

17. Venue is proper in this district under 28 U.S.C. § 1391(B)(2), because all of the events or omissions giving rise to this claim occurred in this district and because all of the property at issue is situated in this district. The Confederate Monument in Travis Park is located in this district, and defendants' actions occurred and will occur in this district.

## D. FACTS

18. In 1888, the U.S. Supreme Court ruled that the Maverick family acquired title to the land that is now Travis Park through adverse possession. *Sabariego v. Maverick*, 124 U.S. 261, 261 (1888).[1]

19. On February 11, 1884, Mary Maverick recorded a conveyance of land to the City of San Antonio for the city block that today is Travis Park.

20. In an 1899 San Antonio City Council ordinance, the city council gave the Confederate Daughters permission to erect a Confederate monument in Travis Park.

21. In an April 5, 1982, interdepartmental correspondence, in seeking to apply for a development grant for Travis Park, the San Antonio Director of Parks and Recreation determined that the city did not have a deed for Travis Park and that no deed had ever been recorded. Indeed, no deed was ever delivered to the City of San Antonio for the tract of land that today is Travis Park.

22. On Monday, July 31, 2017, City Councilmen Roberto Trevino and William Shaw filed a memo with the council's Governance Committee to request a full council vote to remove the Travis-Park Confederate Monument. Scott Huddleston, *New Home May Be Sought for Confederate Statue*, San Antonio Express-News (July 31, 2017, 5:17 p.m.),

---

[1] The plaintiff argued that he had rightful title in fee as documented in Spanish and Mexican colonial documents. However, the court ruled that the colonial documents were insufficient to confer title and that the defendant had acquired title through adverse possession. *Sabariego v. Maverick*, 124 U.S. 261, 301 (1888).

http://www.mysanantonio.com/news/local/article/New-home-may-be-sought-for-Confederate-statue-11721508.php.

23. On Monday, August 28, 2017, the *San Antonio Express-News* reported that the San Antonio City Council will vote whether to remove the Travis-Park Confederate Monument. Josh Baugh, *City Council to Vote Thursday on Removal of Confederate Monuments in Travis Park*, San Antonio Express-News (August 28, 2017, 8:15 p.m.), http://www.expressnews.com/news/local/article/City-Council-to-vote-Thursday-on-Confederate-12045318.php.

### E. COUNT 1 – THE CITY OF SAN ANTONIO DOES NOT HAVE TITLE TO THE LAND IN FEE SIMPLE

24. Without delivery of a deed, title to real property will not pass. *Thornton v. Rains*, 299 S.W.2d 287, 288 (Tex. 1957). Even if a grantor caused a deed to be recorded, the recordation is not dispositive of whether the deed was actually delivered. *Id.* The U.S. Supreme Court ruled in 1888 that the Mavericks had possession of the tract of land that included Travis Park. *Sabariego*, 124 U.S. at 301. Mary Maverick had recorded her conveyance of the land four years earlier. Mary Maverick did not deliver a deed to the City, because the Mavericks had no deed to deliver. The Mavericks had acquired the land of Travis Park through adverse possession and not through transfer

of title.[2] Since Mary Maverick never delivered a deed to the City, employees in 1982 reported that they could find no deed to the park.

25.  In all likelihood, the City acquired adverse possession of the property. The only evidence of conveyance to the City is Mary Maverick's record of 1884. Limitations for perfection of adverse possession with a recorded instrument is twenty-five years. Tex. Civ. Prac. and Rem. Code § 16.027. The Confederate Monument was placed on Travis Park in 1899, fifteen years after the recordation of Mary Maverick's conveyance. When the City's adverse possession perfected, the Monument had been on the land for ten years. The City had actual notice of the adverse nature of the Monument. The land under the Confederate Monument was an inholding adverse possession in favor of the Daughters of the Confederacy that ripened into perfection. The City has no rights in the Confederate Monument, because the United Daughters of the Confederacy has rights derived from adverse possession of the inholding land on which the monument was placed. Adverse possession is valid even for real property dedicated to public use. Tex. Civ. Prac. and Rem. Code § 16.030(b).

---

[2] The prior owners, the Garcia family, had bought the property from the Spanish Crown after the owner before the Garcias, Miguel Losoya, had been executed and his property confiscated by the Crown for Losoya's role in the rebellion of 1811. *Sabariego*, 124 U.S. at 279. The Garcias fled Mexican Texas in 1835 at the outset of the Texas War for Independence never to return. *Id.* at 301. The Mavericks, finding the property abandoned, took possession in 1835. *Id.*

### F. COUNT 2 - THE CONFEDERATE MONUMENT IS AN EASEMENT ON TRAVIS PARK AND IS PROTECTED UNDER THE DOCTRINE OF ESTOPPEL *EN PAIS*.

26. Where an agreement exists for usage of land, an easement by estoppel or *en pais* is created. *F.J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 267-68 (Tex. 1875).

> While the uses and purposes for which a proper dedication may be made are public in their nature, such as ways, landing places, public parks, commons, pleasure grounds, cemeteries, churches, court-houses, and the like, and to constitute a technical dedication it must be to the public for a public use. There is a somewhat numerous class of cases where the subject-matter is a way or an open area, like a public square, and an act has been done by the owner which creates for individuals rights therein in most or all repects like those which they would have by a proper technical dedication, which the easement is a private and not a public one. (Wash. On Eas. and Serv., 220).

*Harrison*, 44 Tex. at 268. An owner of land may create an easement *en pais* by parole agreement or representation that others act upon by spending funds, which will be lost if the right to enjoy the easement is revoked. *Id.* In such an event, the promisee can enjoin the owner of the dominant estate from preventing use of the easement. *Id.* The Daughters of the Confederacy and indeed all the thousands of citizens of San Antonio and Texas, who financially contributed to the construction of the Monument, relied on the City's representation that the City would allow the Monument to be sited at its current location in Travis Park. The San Antonio City Council and Mayor have publicly stated that the Confederate Monument should be removed. When the City removes the Confederate Monument, plaintiffs will no longer

be able to enjoy viewing the Monument and appreciate the minority political speech communicated by the Monument. The City made a representation to its citizens that the City would allow a monument in Travis Park. Citizens and, in particular, the Daughters of the Confederacy engaged in fundraising to pay for the erection of the Confederate Monument. When the City removes the Monument, current citizens and the successors in interest of the citizens of a century ago, the United Daughters of the Confederacy will lose the right to enjoy the easement that allowed the erection and maintenance of the Monument. The proper remedy to the imminent loss of the Confederate Monument's easement *en pais* is to enjoin the City from revoking the easement and removing the Monument.

## G. COUNT 2 – ABRIDGEMENT OF FREE SPEECH AND DUE PROCESS

27. Freedom of speech, expressed in Article 1, Section 8, of the Texas Constitution and the First Amendment of the U.S. Constitution, may not be abridged. The Supreme Court of the United States has held in a case concerning whether the public burning of the American flag at a political protest was a criminal act that:

> Expression may not be prohibited on the basis that an audience that takes serious offense to the expression may disturb the peace, since the Government cannot assume that every expression of a provocative idea will incite a riot, but must look to the actual circumstances surrounding the expression. . . .
>
> The Government may not prohibit the verbal or nonverbal expression of an idea merely because society finds the idea offensive or disagreeable, even where our flag is involved. Nor

> may a State foster its own view of the flag by prohibiting expressive conduct relating to it, since the Government may not permit designated symbols to be used to communicate a limited set of messages.

*Texas v. Johnson*, 491 U.S. 397, 397-98 (1984).

28. The State can have no interest in determining the message, or referent, of political symbols.

> [T]he State's claim is that it has an interest in preserving the flag as a symbol of nationhood and national unity, a symbol with a determinate range of meanings. (record citation omitted)....
>
> If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the expression of an idea itself offensive or disagreeable.

*Texas v. Johnson*, 491 U.S. at 413-14 (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984); *Bolger v. Young's Drug Products Corp.*, 463 U.S. 60, 65, 72 (1983); *Buckley v. Valeo*, 424 U.S. 1, 16-17 (1976); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.

*Texas v. Johnson*, 491 U.S. at 415 (quoting *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 624 (1943) (Jackson, J.)) (public school students cannot be compelled to salute American flag, nor to recite Pledge of Allegiance).

29. The Confederate Monument was erected to express a controversial political opinion. The City's plan to remove the Monument in a matter of hours is an imminent and unconstitutional attempt to curtail free speech by ordaining what mute political symbols must mean. The City's

planned suppression of the Monuments' political speech is a first step in a totalitarian move to determine authorized forms of political communication and to punish unauthorized political speech. The City has expressed no compelling interest in the abridgment of this core political speech.

### H. REQUEST FOR TEMPORARY RESTRAINING ORDER

30.  An affidavits that proves the allegations in the application for injunctive relief is attached and incorporated by reference.

31.  Plaintiffs will likely suffer irreparable injury, if the defendants are not immediately restrained from removing the Travis-Park Confederate Monument. Fed. R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). *The San Antonio Express-News* has reported that the City has already contracted for the removal of the Monument immediately after the City Council vote on Thursday. Other misguided local governments around the country have swiftly removed historic monuments. Plaintiffs believe that the City will remove the Confederate Monument within hours of the filing of this complaint if not enjoined by the Court.

32.  Plaintiffs will suffer irreparable injury, because defendants have publicly announced that they will remove the Confederate Monument and terminate the minority political speech that the Monument communicates. Fed. R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The loss of First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss

of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). 22. Mayor Nirenberg has said that the Confederate Monument should be "placed in a proper context." Kelsey Bradshaw, *S.A. Mayor Wants to Place Confederate Symbols in "A Proper Context,"* San Antonio Express-News (August 15, 2017, 2:57 p.m.), http://www.mysanantonio.com/news/local/article/S-A-Mayor-plans-to-place-Confederate-symbols-in-11820240.php. Mayor Nirenberg is a state actor who is ordaining the political meaning of political symbols in a public forum. This government determination of political symbols in a public forum without a showing of any compelling interest in making the determination and without due process is an irreparable harm, as contemplated under *Texas v. Johnson* and *Elrod v. Burns*.

33. There is no adequate remedy at law, because any legal remedy would be merely illusory. *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984). The denial of free speech and due process on a continuing basis cannot be readily reduced to monetary damages. The only adequate remedy to the abridgment of free speech is the injunctive demand to protect the abridged free speech and to provide the denied due process.

34. There is a substantial likelihood that the plaintiffs will prevail on the merits. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). The City

is planning to abridge the political speech of the Confederate Monument and attempt to substitute its own government-controlled interpretation of the Monument's political communication. Case law on this issue clearly supports the constitutional promise that government actors may not force their own interpretation of political messages on political symbols. *Johnson*, 491 U.S. at 415. Plaintiffs are confident that the Court will agree that the City is seeking to abridge the long-standing tradition of political speech in a public forum, which should be remedied by the Court's authority.

35. The harm to plaintiffs outweighs the harm that a temporary restraining order would inflict on defendants. *Winter*, 555 U.S. at 24; *Yakus v. United States*, 321 U.S. 414, 440 (1944). Plaintiffs will experience irreparable harm by the denial of political speech communicated by the Monument. *Elrod*, 427 U.S. at 373. Defendant will suffer no harm by allowing the Monument to stand.

36. Issuance of a temporary restraining order would not adversely effect the public interest and public policy, because issuance of the order would serve the public interest. *See Winter*, 555 U.S. at 24-26. Indeed, the benefit to third parties would be enormous, as the continued non-abridgment of political speech in a public forum that the City has agreed not merely to tolerate but to promote by promissory estoppel cannot be undervalued. Indeed, the order would mark the end of the proposed Orwellian terror that the City is planning to inflict on the public. The Court's injunction against

the City's plan to control political speech in a public forum will reinforce basic constitutional guarantees in San Antonio that the City would gladly ignore. If there is one principle that the Civil War and the Ku Klux Klan Act resolved it was that federal constitutional protections cannot be ignored by local authorities. The affirmation of this principle will serve the public interest.

37.     Plaintiffs are willing to post a bond in the amount the Court deems appropriate. However, plaintiffs are filing this cause in the public interest and request that the Court order no or a nominal bond. *Kaepa, Inc., v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Firstly, defendant stands in no financial risk by the issuance of the requested injunction. And secondly, plaintiffs are suing in the public interest and stand to recover no damages in this action.

38.     The Court should enter this temporary restraining order without notice to defendant, because plaintiffs will likely suffer immediate and irreparable injury, loss, or damage if the order is not granted before defendant can be heard and there is no less drastic way to protect plaintiffs' interests. Fed. R. Civ. P. 65(b)(1); *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 106 (2d Cir. 2009); *see also Benchbook for U.S. District Court Judges,* at 239. Historic monuments, especially Confederate monuments, are at risk from political ideologues across the country. The City has already made plans to remove the Monument and publicly announced this. Plaintiffs have reason to believe that the City will ignore legal constraints, as they attempt to evade

the authority of this Court as they publicly denounce the Constitutional right to political free speech in a public forum. Plaintiffs believe that were the City to receive notice that this Court was contemplating an injunction to protect the Monument, the City would quickly order the Monument's removal.

39. Plaintiffs ask the Court to set the request for a preliminary injunction hearing at the earliest possible time.

## J. CONCLUSION

40. Plaintiffs have proper jurisdiction and venue to appear before the Court and request injunctive relief. The City has already announced that it will abridge plaintiffs' free speech by removing the Confederate Monument. Plaintiffs will suffer constitutional harm by the removal of the political speech expressed in the Monument. Plaintiffs have serious concerns that the City's Orwellian agenda of control of political speech will succeed without intervention of this Court. For these reasons, plaintiffs ask the Court to issue a temporary restraining order preventing defendants from removing the Travis-Park Confederate Monument.

*Plaintiffs' Original Complaint & Application for Injunctive Relief*
Page 15 of 17

## K. PRAYER

41. For these reasons, plaintiffs ask that the Court do the following:

   a. Order that the City of San Antonio not remove the Confederate Monument from Travis Park;

   b. Enter judgment for plaintiffs;

   c. Award attorney costs to plaintiffs;

   d. Award costs of suit to plaintiffs; and,

   e. Grant any other relief the Court deems appropriate.

August 30, 2017

Respectfully submitted,

By: /s KIRK DAVID LYONS
Texas Bar No. 12743500
P.O. Box 1235
Black Mountain, N.C. 28711
E-mail kdl@slrc-csa.org
Tel. (828) 669-5189
Fax (828) 669-5191

Certificate of Service

I hereby certify that a true & correct copy of PLAINTIFFS' ORIGINAL COMPLAINT & APPLICATION FOR INJUNCTIVE RELIEF is being presented Ex Parte, but will at the court's direction immediately serve by hand copy on counsel for defendants this 30 day of AUG 2017

/S/
KIRK DAVID LYONS
Atty for Plaintiffs

| | |
|---|---|
| STATE OF NORTH CAROLINA | § |
| | § |
| BUNCOMBE COUNTY | § |

### AFFIDAVIT OF KIRK DAVID LYONS

Before me, the undersigned notary, on this day personally appeared Kirk David Lyons, affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1. "My name is Kirk David Lyons. I am competent to make this affidavit. The facts stated in this complaint are within my personal knowledge and are true and correct.

2. I have been reading news articles, talking with witnesses, and reading statements made by the parties in this matter."

_____
KIRK DAVID LYONS

SWORN TO and SUBSCRIBED before me by Kirk David Lyons on August 30, 2017.

_____
Notary Public in and for
The State of North Carolina

ROBERT E. CALLIHAN
NOTARY PUBLIC
Henderson County, NC