```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                SAN ANTONIO DIVISION

 3   RICHARD BREWER, ET AL,              :
     Plaintiffs,                         :
 4                                       :
     vs.                                 : No. SA:17-CV-00837
 5                                       : San Antonio, Texas
     RON NIRENBERG, ET AL,               : August 31, 2017
 6   Defendants.                         :
     ********************************************************

 7
                  TRANSCRIPT OF MOTION HEARING
 8           BEFORE THE HONORABLE DAVID A. EZRA
               SENIOR UNITED STATES DISTRICT JUDGE
 9
     APPEARANCES:
10   FOR THE PLAINTIFFS:
       Kirk D. Lyons, Esq.
11     P.O. Box 1235
       Black Mountain, NC   28711
12     (828)712-2115
       kdl@slrc-csa.org
13
     FOR THE DEFENDANTS:
14     Deborah Lynn Klein, Esq.
       Office of City Attorney
15     Frost Bank Tower
       100 West Houston Street, 18th Floor
16     San Antonio, Texas   78205
       deborah.klein@sanantonio.gov
17
     COURT REPORTER:
18
     Angela M. Hailey, CSR, CRR, RPR
19   Official Court Reporter, U.S.D.C.
     655 East Cesar E. Chavez Blvd., Third Floor
20   San Antonio, Texas   78206
     Phone(210)244-5048
21   angela_hailey@txwd.uscourts.gov

22


23
     Proceedings reported by stenotype, transcript produced by
24   computer-aided transcription.

25
```

1    (1:58 p.m.)

2              COURTROOM DEPUTY:  SA:17-CV-837, Richard Brewer

3        versus Ron Nirenberg, et al.

4              THE COURT:  All right, good afternoon.  Can I have

5        appearances please?

6              MR. CHAPMAN:  Good afternoon, Your Honor.  I'm

7        James Chapman appearing on behalf of Kirk Lyons who I

8        believe the court has permitted to also appear by

9        telephone.

10             THE COURT:  Yes.

11             MR. LYONS:  Mr. Lyons is present by telephone, if

12       y'all can hear me.

13             THE COURT:  We can hear you, Mr. Lyons.  Can you

14       hear me?

15             MR. LYONS:  Thank you.  Yes, sir.

16             MS. KLEIN:  Debbie Klein and Shawn Fitzpatrick.

17       Just for the record, we have not actually been served

18       at this point, but we did want to be heard on the

19       temporary restraining order.

20             THE COURT:  Okay.  All right, Mr. Lyons, are you

21       going to be making the argument?

22             MR. LYONS:  I can begin if I can be heard.  This

23       was filed, Your Honor, may it please this honorable

24       court, we filed this action just before the court

25       closed last night because we had information that the

| | |
|---|---|
| 1 | City of San Antonio was going to vote and take down the |
| 2 | 117-year-old confederate monument at Travis Park.  We |
| 3 | believe that we have met the elements for a temporary |
| 4 | restraining order.  I did enjoy reading the City's |
| 5 | brief response.  It's a great motion to dismiss motion, |
| 6 | it's a 12(b)6, but there wasn't very much temporary |
| 7 | restraining order there, save that likelihood of |
| 8 | success on the merits they put in doubt.  The case is |
| 9 | in Federal Court on a Federal question.  We are |
| 10 | obviously going to have to amend our complaint, we had |
| 11 | to do this very hurriedly and rushed and we have, you |
| 12 | know, we have time to do that since they have not |
| 13 | answered to properly amend it and clean it up, but |
| 14 | what's on issue here is the irreparable harm that will |
| 15 | be done if the City of San Antonio is allowed to take |
| 16 | down this 117-year-old monument probably tonight. |
| 17 | While we are trying to wrestle these issues in Federal |
| 18 | Court.  We have a case very similar to this in Austin |
| 19 | in the Western District of Texas, Austin Court, where |
| 20 | we have sued the University of Texas.  One of the |
| 21 | plaintiffs is the same in that case, Texas Division |
| 22 | Sons of Confederate Veterans.  The case was filed less |
| 23 | than a week -- a little over a week ago and just |
| 24 | yesterday we issued a joint advisory with the |
| 25 | University of Texas and the plaintiffs with the court |

1    there in Austin which would allow essentially the

2    maintenance of a status quo while these issues --

3    especially if the 12(b)6 level are being pled and

4    argued.  That agreement was just signed yesterday and I

5    would be happy to make a copy of that available to the

6    court and opposing counsel, of course.

7        THE COURT:  All right.  Just a minute,

8    Mr. Lyons --

9        MR. LYONS:  We have a similar situation here in

10   that where we're facing irreparable injury, there's

11   always a possibility that the monument could be

12   damaged.  Once it's down makes it that much harder to

13   put back up and there's no -- we don't see that there

14   is a burden on the City whether they take it down

15   tonight or at the end of the 12(b)6 period if they

16   should prevail.  We certainly think it's in the public

17   interest.  Monuments are coming down all over the

18   nation.  We do have a Federal question, we think that

19   we can hold on to that Federal question that it's

20   appropriate, the First Amendment problems that we see

21   with the City of San Antonio mandating what this

22   statute stands for and why it should come down.  We

23   have cited the Barnes case of Supreme Court in Texas v.

24   Johnson regarding political speech of political bodies

25   in this context and we certainly think that we can

1  distinguish this case from the recent Walker versus

2  Texas SCV case.  Again that's more appropriate for the

3  12(b)6 level of this case and not the temporary

4  restraining order.

5          The likelihood of success on the merits, I

6  think that we have a fair shot at it, Your Honor.

7  There is of course the City has alleged a standing

8  problem which again is more proper to the 12(b)6 part

9  of this case.  The Supreme Court of Texas is probably

10  fixing to rule on that very issue within the next

11  couple of weeks on the standing issue, but we certainly

12  again we do need to beef up the standing that we have

13  alleged in the complaint and we have the right to do

14  that.  That analysis is not appropriate at the TRO

15  level and what we allege is irreparable injury if that

16  monument comes down tonight before we had a chance for

17  our arguments to be properly read and heard.  It's

18  certainly in the public interest.  We believe that

19  there is a likelihood that we can prevail on the merits

20  and certainly we do not think this puts an undue burden

21  on the City to wait until the judicial process can wind

22  its way.  It won't be that long.  If they're confident

23  that they can win at the 12(b)6 level and dismiss this

24  claim, you know, we're only going to be talking a

25  matter of weeks or just a couple of months before the

1    end of that process and so, Your Honor, we on behalf of

2    the plaintiffs and other similar situated, this

3    monument needs to stay here for the time being.

4         THE COURT:  All right.  Thank you very much,

5    Mr. Lyons.

6         MS. KLEIN:  May I respond, Your Honor?

7         THE COURT:  Yes.  That's why you're here.

8         MS. KLEIN:  First and foremost, Your Honor, we

9    would point out that while the plaintiffs have filed an

10   application for injunctive relief, they don't have any

11   request within their pleadings for final relief in this

12   case which in itself makes their entire suit infirm.

13   Beyond that, Mr. Lyons has indicated that our response

14   is more of a 12(b)6 motion, but in fact, as a basic

15   tenet of entering a temporary restraining order which

16   is an extraordinary relief, there are four elements

17   that it is plaintiff's burden of proof, it's not our

18   burden to disprove, although I think we've done that.

19   And the first of those is the likelihood of success on

20   the merits.  And if, in fact, what we've established is

21   a good 12(b)6 motion, that is establishing that there's

22   not a likelihood of success on the merits for the

23   plaintiff.  And I think it's important to note that as

24   those steps, those elements of a TRO are set fourth and

25   I'll refer the court specifically to Clark versus

1     Prichard out of the Fifth Circuit which is 812 F2d 991,

2     it's not just a likelihood, it's a substantial

3     likelihood of success on the merits.  And I would like

4     if it's okay with the court to go through some of the

5     elements that I've established through our response

6     already and may be a bit repetitive of what's been

7     filed, but I'd like to elaborate on some of them, if I

8     may.

9          THE COURT:  All right.

10          MS. KLEIN:  So first of all, there is a standing

11     question which Mr. Lyons has made light of in this

12     case.  However, standing is jurisdictional.  If they

13     don't have standing, the court doesn't have

14     jurisdiction over the case and we do not believe there

15     is standing in this case.  The plaintiffs have failed

16     to identify a single injury that is personal to them

17     which is an essential element of standing.  It's not

18     sufficient to just say I'm injured to the same extent

19     as the public at large.  They have to show a personal

20     injury to themselves.  Mr. Lyons indicated that he

21     expected some sort of ruling from the Supreme Court on

22     this issue in the future.  Well, the Texas Supreme

23     Court has spoken to this already.  And they've said

24     exactly that, that just merely being a taxpayer and

25     suffering the same supposed harm as the general public

```
1    is not sufficient.

2         THE COURT:  I'm aware of that.  The fact of the

3    matter is that this court doesn't judge Federal

4    constitutional claims predicated on the decisions of

5    State Supreme Courts.  I look to Federal law, not State

6    law.  State law may be instructive, but it is not

7    controlling.

8         MS. KLEIN:  I understand, Your Honor, and so I'd

9    also reference the court to Flast versus Cohen, 392

10   U.S. 83, which is establishes that there is not a

11   qualification for taxpayer standing except in very

12   limited circumstances which relate to establishment

13   clause lawsuit which this is not.  The reason I cited

14   to the State law as well is because in the cases in the

15   Federal system that I was able to find this morning,

16   they all go to the expenditure of Federal funds and so

17   that's why just for the court's edification I also

18   wanted to reference the State law as well and what the

19   State's position has been on taxpayers.

20            We also have taken the position that the

21   parties that have been sued in this case are not the

22   proper parties to the suit.  The plaintiffs have filed

23   suit against each of the council members, not the City

24   of San Antonio.  The City Council is voting on the

25   agenda item today and once that item is passed, their
```

1     roles and responsibilities with respect to it are

2     essentially completed and it goes to the City to follow

3     through on the actions that they have set forth.

4           THE COURT:  Well, they sued the Mayor.

5           MS. KLEIN:  They did sue the Mayor, Your Honor.

6     But as a matter of record, we set forth that they did

7     not file the suit against the proper parties.  More

8     importantly, though, let's get to the actual causes of

9     action which they pled which are three.  The first one

10    is this claim that the City doesn't actually own the

11    property at issue.  Their own pleadings dispel this

12    argument that they have made.  They concede in their

13    pleadings that in the 18 -- I believe it's the 1880s,

14    Mary Maverick, who was the owner of the property,

15    previously conveyed and recorded a conveyance of the

16    property to the City.  The City has held that property

17    uncontested except for one contest that we could find

18    since that time and that contest occurred in the 1950s

19    when the City was going to build an underground parking

20    garage in additional property that's next to the park.

21    And the court -- again it is in State Court, but the

22    court did judicially recognize the City's ownership of

23    that property.  And --

24          THE COURT:  Well, that, the court takes cognizance

25    of because that's a question of State law, who owns a

1    particular parcel of property or a building or a

2    monument would be determined generally, unless it's a

3    Federal parcel, by State law.  That's not what we're

4    talking about.  What I was talking about when I said we

5    don't judge Federal constitutional claims by rulings of

6    State Court on things like free speech and those --

7    because we have Federal law we look to.  In fact, the

8    Supreme Court of Texas, when judging a Federal

9    constitutional claim, is compelled to look to Federal

10   law as well.

11        MS. KLEIN:  And we believe the Federal law

12   supports our position in this case.  Going also along

13   the question of the ownership of the property, the

14   plaintiffs have not pled any allegation that they have

15   a property interest in that property.  They have no

16   standing to claim we don't own the property because

17   there's been no allegation that any plaintiff is

18   actually entitled to ownership of the property.  This

19   should have -- if it could be brought as a suit which

20   we don't believe it should, it's essentially a trespass

21   to try title suit and we believe that the allegations

22   as pled support the City owns the property.

23        They've also made an allegation of adverse

24   possession that -- and I may be getting their argument

25   wrong, but as I read their case, what they're

1    contending is that because the statue was placed on the

2    property in the 1890s and we did not record a deed

3    within 25 years, that that property has now become the

4    property of some other entity, not the plaintiffs,

5    through adverse possession.  And again I do rely on

6    State law for this proposition, but under the Texas

7    Civil Practice and Remedies Code, Section 16.061a,

8    Limitations do not apply against the interest of

9    government entity in the State of Texas.  So there is

10    no adverse possession that can be asserted against the

11    City of San Antonio.

12    Additionally under 16.030, it specifically

13    says that you cannot take adverse possession of

14    property -- a person may not -- of property that is

15    held for public use, such as a park.  So based on that,

16    their adverse possession arguments are without merit

17    and they are not likely to be successful on that.

18    They've also alleged this concept of estoppel -- I'm

19    going to butcher this, but I believe it's pronounced in

20    pais.  And the theory is that because the statue was

21    placed there and we haven't done anything about it,

22    that essentially it's an easement and we can't do

23    anything about it.  Again I rely on State law for this

24    concept of estoppel.  The states anyway have

25    established that there is no estoppel against a

1    government for enjoying its government functions and in

2    this particular case the operation of a park is deemed

3    to be a government function and we don't believe that

4    estoppel is appropriate.  We don't believe there's been

5    facts alleged.  And again this comes back to the

6    standing issue, I haven't seen any allegation that any

7    of the plaintiffs have a property interest in the

8    property that the statue is on and so based on that, we

9    don't believe they can be successful on that at the end

10    of the day.

11            The third claim is this claim that there is

12    an abridgment of their freedom of speech and of the due

13    process.  On the freedom of speech, the U.S. Supreme

14    Court has clearly spoken through the decision of

15    Pleasant Grove, City of Pleasant Grove versus Summum,

16    not sure how to pronounce that.  And in that, they

17    recognize the concept of government speech and

18    specifically discuss the fact that monuments and parks

19    are aspects of government speech.  And so, therefore,

20    the scrutiny of a First Amendment claim is not truly

21    applicable to these challenges and that governments

22    control and have final authority over what speech is

23    displayed in their parks, assuming use of permanent

24    monuments.  Whether those monuments are placed there by

25    the City or whether they give permission to someone

1    else to place it, it turns into the government's speech

2    because it is associated with the government's property

3    which is the park.  The Supreme Court in that case

4    clearly said that the government gets to make a

5    decision what speech they choose to express.  And the

6    mere fact that a hundred years or more ago the then

7    reigning or the then installed Council -- poor choice

8    of words, Your Honor -- the installed City Council at

9    the time felt that was a government speech they were

10   comfortable with.  The current City Council, duly

11   elected by the public, does not agree with them.

12        THE COURT:  Have they actually voted yet?

13        MS. KLEIN:  The vote was going on this afternoon.

14   It passed.

15        THE COURT:  So there is an actual vote to remove

16   the statue.

17        MS. KLEIN:  There is an ordinance in place.

18        THE COURT:  So we do have a case or controversy

19   because if there had been no vote, if they hadn't

20   voted, if there hadn't been anything to challenge, we

21   wouldn't have a case or controversy and as you know in

22   Federal Court, the very first thing that I need to have

23   before I have jurisdiction, because this is a court of

24   limited jurisdiction, is a case or controversy, so now

25   we have a case or controversy.

1          MS. KLEIN:  Thank you, Your Honor.  Plaintiffs

2     have not alleged any specific free speech violation

3     that would go to them as the plaintiffs.  I believe

4     there's a pleading to the effect that the monument's

5     free speech is being abridged, but the monument doesn't

6     hold free speech.  To the extent that they're

7     contending the monument was put up by the Daughters of

8     Confederacy, they're not a party to this lawsuit.  The

9     plaintiffs -- again it wouldn't matter anyway because

10    the monument at this point is considered to be

11    government free speech or should be considered to be

12    government free speech.  There is nothing that the

13    plaintiffs have alleged nor is there any evidence I

14    believe that they will be prohibited from exercising

15    their free speech rights as they're entitled to under

16    the law and in a public forum, but this particular

17    statue is not their expression of free speech, so

18    therefore, there's no likelihood they would succeed on

19    the merits of a free speech claim.

20              Their final claim is abridgment of a due

21    process.  Again the first question in looking at a due

22    process claim is what is the property or liberty

23    interest which they are claiming they've been deprived

24    of.  There's not one.  They have not established any

25    property interest in the monument itself or in the park

1    property that they own as the plaintiffs.  They have

2    tried to assert this freedom of speech, but as I've

3    just addressed the court, that is not actually anything

4    that's being abridged.  So based on that and based also

5    on the fact that we have gone through the process,

6    there has been an open meeting, there has been an

7    opportunity for people to speak and the legislative

8    body has taken the vote that it has, there has been

9    appropriate due process for proceeding with the

10   decision to remove the statue as government speech.

11         The second element of a preliminary

12   injunction is the concept of irreparable harm and we do

13   not believe that there's been a sufficient pleading of

14   irreparable harm in this case.  The City represents

15   that the statue is not being destroyed.  It is being

16   removed, it will be stored.  If at the end of the day

17   the court should rule in favor of the plaintiffs on

18   this case, it can be replaced if the court so orders.

19   If there was damage to it, the City could be ordered to

20   repair any damage or to properly place an equal statue

21   back on the pedestal or back on the place where it's

22   currently located.  So we do not believe that there is

23   irreparable harm in this case to justify the issuance

24   of a temporary restraining order.

25         The third element is a question of where is

1    the greater injury in granting it or denying it.  We

2    don't believe the plaintiffs have established any

3    injury on their part as we said at the very beginning

4    because they failed to establish any sort of property

5    or liberty interest which is being violated.  We do

6    feel that if the TRO is granted, that there is a harm

7    to the City, it's to the City at large through both the

8    electoral process and the decisions made by the

9    community of the City of San Antonio to elect people to

10   the City Council to act on their behalf as well as to

11   the legislative process to make determinances to what's

12   in the best interest of the City.

13         And finally, the last one is whether or not

14   granting the TRO will disserve the public and the City

15   does feel strongly that granting this TRO will disserve

16   the public.  Mr. Lyons has stated as I think everyone

17   in this courtroom is well aware throughout the country

18   the issue of removal of these statues has been at the

19   forefront, it's all over the newspapers and we believe

20   that one day longer with the statue in place is one day

21   more of disservice to the public at large.  And so

22   based on that, we would ask that the court deny the

23   temporary restraining order.  We don't believe they've

24   met any of their burdens and in fact if we've been able

25   to establish that even one of their elements is not

1    established, the TRO cannot go forward.  I also just

2    for the record would like to reiterate as in our

3    response, we've objected to the affidavit of Mr. Lyons.

4    The only I guess evidence attached to his application

5    is his own affidavit which states that he's read

6    newspaper articles and talked to people.  He has no

7    indication that any of the information contained within

8    the petition is true and correct based on anyone's

9    personal knowledge.  And so based on that, we don't

10   believe the temporary restraining order motion is

11   properly supported.  Does the court have any questions?

12          THE COURT:  I do not.

13          MS. KLEIN:  Thank you, Your Honor.

14          THE COURT:  Mr. Lyons, I'll give you a moment for

15   short rebuttal argument if you'd like.

16          MR. LYONS:  Yes, Your Honor, briefly.  One, as is

17   clear in our complaint, all of the defendants are

18   served in their official capacity which is essentially

19   makes it a suit against the City of San Antonio.  No

20   one is sued in their individual capacity.  I think that

21   was properly done.

22             Secondly, with all the monuments coming down

23   around the country, we have seen several instances

24   where government taking down monuments have botched it.

25   They have broken the monument, destroyed them and it's

1     been badly done.  And any time that you take down a

2     117-year-old monument, you're going to have problems if

3     it's not done by experts.  The taxpayers of San Antonio

4     are -- two of our plaintiffs are taxpayer citizens of

5     San Antonio have an interest in their money not being

6     wasted, that this not be done twice if we should

7     prevail.  Our position is very reasonable, Judge, we're

8     just asking for the status quo.  While we push this

9     through the court, all of San Antonio's wonderful

10    12(b)6 arguments can then be properly pled and

11    researched and we can respond and we can take our time

12    and set up a preliminary injunction hearing where both

13    sides can more fully brief their positions, but the

14    12(b)6 standard does not apply here, Your Honor, and

15    anything that we have the right to fix anything that

16    San Antonio has very kindly pointed out for us if we

17    think it needs fixing, but right now we are facing

18    irreparable injury, it is in the public interest that

19    this monument be protected for now until these issues

20    are all brought out.  There is the pending jurisdiction

21    of the court to hear the State claims attached to the

22    Federal claims as long as they're related, so it's just

23    like what we did in Austin, Judge, give us the time to

24    pull the West Law out and get to work on this and

25    properly bring this through pleadings in the court

1        whether it be preliminary injunction hearing which we

2        can set at all parties' and the court's convenience or

3        a 12(b)6 motion which this is not the proper place to

4        argue, Your Honor.

5             THE COURT:  My understanding is at the University

6        of Texas a number of statues were, in fact, removed.

7             MR. LYONS:  Yes, Your Honor, that's true.  We did

8        not respond in time, but we -- our lawsuit was

9        regarding the pedestals or plinths that remained.

10            THE COURT:  The statues are gone.

11            MR. LYONS:  Statues are gone.  They're in storage

12       at the -- we didn't get there in time for that

13       because --

14            THE COURT:  I think what we need --

15            MR. LYONS:  The pedestals which they were going to

16       remove are being left by agreement.  That's what the

17       agreement covered is the plinths or pedestals that were

18       left that our information was were going to be removed.

19       That's what the status quo is, Your Honor.

20            THE COURT:  All right.  Okay.  I just want to make

21       it clear that there was no Federal judge in Austin that

22       issued a temporary restraining order or preliminary

23       injunction.  That didn't happen.

24            MR. LYONS:  No, that is correct, Your Honor.  No,

25       it was a joint advisory to the court by agreement.

| | |
|---|---|
| 1 | THE COURT:  And it didn't actually have anything |
| 2 | to do with the statute themselves, it just had to do |
| 3 | with the bases of them. |
| 4 | MR. LYONS:  The pedestals, yes, Your Honor, that's |
| 5 | correct. |
| 6 | MR. CHAPMAN:  Your Honor, would the court allow me |
| 7 | to make -- |
| 8 | THE COURT:  No, sir.  We have counsel here.  He's |
| 9 | already argued on behalf of the parties.  We can't -- |
| 10 | this is not a tag team match here. |
| 11 | MR. CHAPMAN:  Thank you, Your Honor. |
| 12 | THE COURT:  So you have competent counsel.  I've |
| 13 | given him plenty of opportunity to argue. |
| 14 | First of all, I think the court needs to make |
| 15 | it very clear that my scope of consideration here has |
| 16 | to do with some very complicated issues of Federal law |
| 17 | having to do with constitution and having to do with |
| 18 | jurisdiction.  There is nothing in my charge here, |
| 19 | nothing, that gives me either the right or gives me the |
| 20 | authority to make an independent determination as to |
| 21 | whether or not it is a good thing or a bad thing to |
| 22 | have the statue of William Travis in the park.  That is |
| 23 | not my job, it is not my authority, I have no right to |
| 24 | do that and I have no intention of doing that.  That is |
| 25 | a function of a governmental body elected by the people |

1       of the City of San Antonio, not a United States

2       District Judge appointed by President Reagan in 1988.

3       My job is to determine whether there is a free speech

4       violation here, whether the plaintiffs have standing to

5       assert their claim and that is it.  So I want to make

6       it very clear here because unfortunately there is

7       always these misunderstandings.  When Federal judges

8       who have limited jurisdiction make these decisions,

9       they're often misunderstood as being a decision on the

10      merits of a particular action taken by someone rather

11      than whether or not there is a Federal cause of action

12      that exists under the law and that is what my charge is

13      here.  And I think that's very very important to

14      understand.  Now, let me make it clear that I do not,

15      as I sit here today, I do not understand that it's the

16      City's present intention to destroy the statue.  Am I

17      correct?

18          MS. KLEIN:  That is correct, Your Honor, and we've

19      actually hired a company that's an expert in removal of

20      these sorts of statues.

21          THE COURT:  So it's my understanding that what the

22      City intends to do is at some point remove the statue

23      and then -- intact, and then place it somewhere in

24      storage until the City finds another appropriate place

25      to house it.  Am I correct?

1    MS. KLEIN:  That is correct, Your Honor.

2    THE COURT:  Am I understanding that correctly?

3    MS. KLEIN:  That is correct, Your Honor.

4    THE COURT:  Now, of course, if the plaintiffs were

5    to prevail in their lawsuit, then the statue, if it was

6    removed, would have to be replaced.  So the point is

7    that the statue has to remain intact.

8    MS. KLEIN:  Yes, Your Honor.

9    THE COURT:  Right?

10   MS. KLEIN:  Yes.

11   THE COURT:  So we understand that.  And that isn't

12   always the case.  I mean I've seen other cases where

13   governmental bodies come in with a wrecking ball -- not

14   necessarily statue cases, but with historic properties

15   and so forth and the desire is to get rid of it and the

16   cheapest and easiest way to do that is to demolish it

17   and just have the remnants carted away and then someone

18   comes along and says, wait a minute, this is a historic

19   property, you can't do that, and then we have a Federal

20   lawsuit.

21   MS. KLEIN:  That's correct.  That is not the

22   intent here, Your Honor.  The intent is to remove it in

23   full -- I don't know what the proper term is, but

24   intact.

25   THE COURT:  Intact is the proper term.

1        MS. KLEIN:  Intact, keep it in storage.

2        THE COURT:  All right.  Well, the parties have

3  raised a number of issues here.  I'm not going to make

4  a ruling from the bench.  I think that's not

5  appropriate, but I do understand the importance of

6  getting a ruling out quickly.  It is my general

7  practice in a case such as this, and I've been doing

8  this for a long time, to issue a written ruling.  And I

9  do that for two reasons.  First of all, I do it so that

10  the parties have something in hand that explains

11  precisely what the court did and more importantly the

12  parties are entitled to know why I did it and the legal

13  basis for my ruling rather than the court just simply

14  saying I'm going to do this or that.  That's important.

15  Secondly, it also provides the parties a document by

16  which if they choose to do so, they can seek an

17  emergency appeal to the Fifth Circuit Court of Appeals

18  which is much more difficult to do if all you have is

19  an oral ruling, right?  And I believe in the appellate

20  process, I always have.  I'm not saying that people are

21  going to appeal what I do.  I do pretty good on appeal,

22  I understand, but the fact of the matter is I sit by

23  designation I have sat for over 27 years on the Ninth

24  Circuit Court of Appeals, I do it two or three times a

25  year, so I believe in the appellate process.  So if you

1   want to appeal what I do, I have every intent of

2   providing the parties with the document by which they

3   can do that, okay.  I will try to get an order out

4   by -- it's 2:30.  I will try to get an order out today

5   by 4:00.  My understanding is that nothing is going to

6   take place before 5:00, is that what we were told?

7          MS. KLEIN:  That's correct, Your Honor.

8          THE COURT:  All right.  Now, I would urge all

9   concerned to exercise a degree of contemplative

10  restraint regardless of what this court does, okay.

11  This is not the end of this case regardless of whether

12  I grant or deny the motion.  People have very strong

13  feelings about these issues and I understand and

14  appreciate that, I do.  But a resort to individual

15  action in a way that would cause disruption or worse is

16  not the right way to vindicate one's rights in a

17  situation like this.  It just isn't productive.  It

18  doesn't work, it backfires virtually every time it's

19  done and tends to validate the arguments made by the

20  opposing side, so I would certainly urge all to be

21  calm, let the process run its course.  Regardless of

22  what I do today, there will be a further motion in this

23  case down the road.  This is not a motion to dismiss

24  the case.  This is simply a motion to seek a

25  restraining order on the City's removal of the statue

1    to another place where the statue would be preserved.

2    It is not a request by the City to destroy the statue.

3    That's important to understand.  So I will take the

4    matter under advisement and as I said I'm going to try

5    to get an order out in writing between four and 4:30

6    this afternoon.  Okay.  Thank you very much for your

7    arguments.  Thank you, Mr. Lyons.

8         MR. LYONS:  Thank you, Your Honor.

9         THE COURT:  Court stands in recess.

10        COURT SECURITY OFFICER:  All rise.

11   (2:34 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    *    *    *    *    *

2    UNITED STATES DISTRICT COURT

3    WESTERN DISTRICT OF TEXAS

4

5        I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above-entitled matter.

7    I further certify that the transcript fees and format comply

8    with those prescribed by the Court and the Judicial

9    Conference of the United States.

10

11   Date signed:  September 13, 2017

12

13                            /s/ Angela M. Hailey
                              _____
14                            Angela M. Hailey, CSR, CRR, RPR
                              Official Court Reporter
15                            655 East Cesar E. Chavez Blvd.
                              Third Floor
16                            San Antonio, Texas  78206
                              (210)244-5048
17

18

19

20

21

22

23

24

25
```