IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD BREWER, JEAN CAROL LANE, TEXAS DIVISION SONS OF CONFEDERATE VETERANS, INC., *Plaintiffs* | § § § § § | |
| *v.* | § § | 5:17-CV-00837-DAE |
| RON NIRENBERG, ROBERTO TREVINO, WILLIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, JOHN COURAGE, CLAYTON PERRY, *Defendants* | § § § § § § § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, MOTION TO DISMISS

Now come RON NIRENBERG, in his Official Capacity as Mayor of the City of San Antonio, and ROBERT TREVINO, WILIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, and JOHN COURAGE, in their official capacities as Members of the San Antonio City Council and file this their Motion for Summary Judgment or alternatively Motion to Dismiss Pursuant to Fed. R. Civ. P. 12and would show unto the court as follows:

### I.     BACKGROUND

**A.     FACTUAL BACKGROUND**

The same organization bringing the instant lawsuit has unsuccessfully attempted in several other cases to force the State and/or local governments to espouse their racist point of view. Texas Division, Sons of Confederate Veterans unsuccessfully sought state approval for a

specialty license plate featuring the Confederate Flag.[1] Likewise, the Texas Division, Sons of Confederate Veterans failed, in both federal and state court, to compel the University of Texas to display statues of Confederates.[2] Texas Division, Sons of Confederate Veterans also failed to force the City of Dallas to continue to display a statue of Robert E. Lee.[3] The instant case is the most recent attempt by the Texas Division, Sons of Confederate Veterans, to compel the continued display of Confederate statues by an unwilling party. For many of the same reasons that their previous attempts have failed, and a few new reasons, this attempt fails as well.

Plaintiffs are an individual (Richard Brewer) and an organization (Texas Division, Sons of Confederate Veterans, Inc.). Dk. 44, pp. 1-2. Plaintiffs initially brought suit against these Defendants, members of the San Antonio City Council, in their official capacities.[4] Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[5]

Plaintiffs allege that in 1899, the "Confederate Daughters" petitioned the City of San Antonio and were granted permission to erect a "Confederate Monument" in Travis Park, a park owned by the City of San Antonio.[6] Id. p. 6. Plaintiffs further allege that in 1908, two cannon "presented to the City of San Antonio, Tex.[,] by the U.S.Congress, for the benefit of the Confederate Camp . . . " Dk. #44, p. 7. The cannon were placed at the base of the statue in Travis Park.

---

[1] *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, ––– U.S. –––, 135 S.Ct. 2239, 192 L.Ed.2d 274 (2015).
[2] *McMahon v. Fenves*, 2018 WL 3118692 (W.D. Tex. June 25, 2018); *Bray v. Fenves*, 2016 WL 3083539 (Tex. App. Texarkana 2016).
[3] *Patterson v Rawlings*, 287 F. Supp. 3d 632 (N.D. Tex. 2018).
[4] Suit against an employee/official in their official capacity is equivalent to suit against a government entity.
[5] *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978).
[6] In fact, the group's name was the "Daughters of the Confederacy." (Ex. A)

In August 2017, the San Antonio City Council enacted an ordinance for the removal of the monument from Travis Park. Ex. B. The monument, including the statue and the cannon were removed and have been maintained by the City of San Antonio pending the resolution of this matter.

## B.     PROCEDURAL HISTORY

Plaintiffs filed suit on August 30, 2017 and sought a temporary restraining order to prevent the City from removing the monument. Dk. #1.  A hearing on the TRO was held before the Honorable David Ezra on August 31, the same date on which Council voted to remove the statue.  Plaintiffs' application for TRO was denied that same date. Dk. #7.  In the same order, the Court directed that the monument be removed  "in such a manner as to preserve the integrity of the Monument; and further that the Monument be stored in a secure location in order to protect it from damage or from being defaced pending resolution of this lawsuit or further order of this Court." Dk. #7, p. 9

Plaintiffs filed their Second Amended Complaint on June 22, 2018.[7]  Dk. #44.  Plaintiffs' current live petition alleges causes of action for violation of free speech, violation of the Texas Antiquities Code, Tex. Nat. Res. Code Ch. 191, rendering of a "charitable gifts' purpose impossible" charitable trust and conversion.  As will be shown below, Defendants are entitled to summary judgment on all claims asserted, and such judgment should be dispositive as to those claims against Defendants who have not yet been required to answer in this cause.  Defendants will show that they are entitled to judgment as a matter of law for the following reasons;

1.      Plaintiffs lack standing to bring some or all of the claims asserted;

---

[7] Plaintiffs' Second Amended Complaint also adds new defendants, including the City of San Antonio and each council member in their individual capacities. These parties are not yet  joined in the suit.

    2.        Plaintiffs have failed to assert a claim on which relief can be granted;

    3.        There is no evidence to support one or more of element of Plaintiffs asserted causes of action; and

    4.        This Court lacks jurisdiction over some or all of the claims asserted.

## II.    ARGUMENT AND AUTHORITIES

**A.    Standards of Review**

**1.    Summary Judgment Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[8] A material fact is one that might affect the outcome of a case under the governing substantive law.[9]

The moving party has the burden to demonstrate that there is no actual dispute regarding any material fact, but this burden does not require the movant to produce evidence showing the absence of a genuine issue of material fact.[10] After the moving party has met its burden, the non- moving party must set forth specific facts showing that a genuine issue of material fact does exist.[11] If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the case, and on which it will bear the burden of proof at trial," the summary judgment in favor of the defendant is warranted.[12] "Unsubstantiated assertions of an actual dispute" are insufficient to withstand a motion for summary judgment.[13]

**2.    F.R.C.P. Rule 12 Standard**

---

[8] FED. R. CIV. P. 56(a); *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
[9] *Id.* at 250.
[10] *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986).
[11] FED. R. CIV. P. 56(e).
[12] *Celotex,* 477 U.S. at 323; *see also Cleveland v Policy Management Sys. Corp*., 526 U.S.795, 796 (2000).
[13] *Thomas v Price*, 975 F.2d 231, 235 (5th Cir. 1992) *citing to Celotex*, 477 U.S. at 323.

Fed. R. Civ. P. Rule 12 (c) provides that a party may move for judgment on the pleadings after the pleadings are closed so long as the motion will not delay a trial. In the instant case, Plaintiffs filed an amended pleading after the close of pleadings. Moreover, the motion is filed on the date by which all dispositive motions are required to be filed. Accordingly, a motion under Rule 12 (c) is appropriate and timely. "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same."[14]

Under Fed.R.Civ.P. 12(b)(6), a party may assert, through a motion to dismiss, the defense of "failure to state a claim upon which relief can be granted". In considering a motion to dismiss a complaint for failure to state a claim, the Court must accept as true the non-movant's well-pleaded factual allegations and any reasonable inferences to be drawn from them.[15] However, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[16] "[A] statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient.[17] "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief ..."[18] The court is not required to "conjure up unpled allegations or contrive elaborately arcane scripts"

---

[14] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F. 3d 305, n.8 (5th Cir. 2002) citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* §1368 at 591 (Supp.2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (footnote omitted)).
[15] *U.S. v. Gaubert*, 499 U.S. 315, 326, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *C.C. Port, Ltd. v. Davis-Penn Mortgage Co*., 61 F.3d 288, 289 (5th Cir.1995).
[16] *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) citing, 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 156-159.
[17] *Id.*
[18] *Campbell, supra*, 43 F.3d at 975 citing, 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.-5] at 12-91.

to save a complaint.[19] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[20]

.   Thus, a complaint should be dismissed for failure to state a claim if it appears beyond doubt the plaintiff can prove no set of facts in support of a claim which would entitle him to relief.[21] Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.[22] Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[23] The alleged facts must "raise a right to relief above the speculative level."[24] In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."[25]

Following *Twombly* and *Iqbal,* Plaintiff has the burden to allege facts that show entitlement to relief.[26] Well-pled facts that merely permit an inference of possible misconduct do not show entitlement to relief as required by Rule 8(a)(2).[27] Other appellate courts have also affirmed dismissals of municipal liability claims based on insufficient factual allegations.[28]

---

[19] *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).
[20] *Campbell, supra*, 43 F.3d at 975 citing, *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

[21] *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); *Bauer v. Texas*, 341 F.3d 352, 356 (5th Cir. 2003).
[22] *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).
[23] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").
[24] *Twombly,* 550 U.S. at 555.
[25] *Id.* at 570.
[26] *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 213 (5th Cir.2009).
[27] *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir.2009) (relying on *Iqbal* ).
[28] *See Missel v. County of Monroe,* 351 F. Appx 543, 545-46 (2d Cir.2009); *Bittner v. Snyder County, Pa.,* 345 F. Appx 790, 793 (3d Cir.2009).

Defendants assert that Plaintiffs have failed to state allege facts sufficient to establish entitlement to relief or to state a claim. Defendants hereby incorporate the arguments set forth below and seek dismissal pursuant to Fed. R. Civ. Proc. 12(c).

**B.     Standing**

The jurisdiction of the courts may be invoked only if the party bringing suit has standing to bring its claims.[29] Article III of the Constitution limits the exercise of the judicial power to the "resolution of 'cases' and 'controversies.' "[30] Standing to bring suit is an "essential and unchanging part of the case-or-controversy requirement."[31] Standing" limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong,"[32], in order to ensure that the judicial power is invoked only to "redress or prevent actual or imminently threatened injury" particular to the plaintiff.[33]

The elements of standing are well established: a plaintiff must demonstrate that it (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[34] The plaintiff has the burden of establishing each of these elements "with the manner and degree of evidence required at the successive stages of the litigation."[35] To survive a motion-to-dismiss "the plaintiff must clearly allege facts demonstrating each element."[36] To survive a Motion for Summary Judgment a plaintiff must adduce evidence to support the facts alleged demonstrating each element.

---

[29] *McMahon v. Fenves*, 2018 WL 3118692 (W.D. Tex. June 25, 2018).
[30] *Id*. Citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).
[31] *Id*. Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
[32] *Id*. Citing *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), *as revised* (May 24, 2016)
[33] *Id*. Citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).
[34] *Id*. Citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130.
[35] *Id*. Citing *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.
[36] *Id*. Citing *Spokeo*, 136 S.Ct. at 1547 (internal punctuation and citation omitted).

To demonstrate an injury in fact, a plaintiff must show " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' "[37] A particularized injury "must affect the plaintiff in a personal and individual way."[38] Unlike when one is challenging the legality of an action taken directly against the plaintiff, when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed."[39]

**1.  Legally Protected Interest**

To satisfy the injury-in-fact prong, a plaintiff must allege an invasion of a "legally protected interest," that is both "concrete and particularized."[40] The legally protected interest Plaintiffs seek to protect is the right to hold a politically unpopular viewpoint. Plaintiffs argue that the City engaged in viewpoint discrimination against their viewpoint—glorifying the Confederate legacy—when the City removed the so-called "Travis Park Confederate Monument" from Travis Park. Because Plaintiffs share the unpopular viewpoint reflected in the statue, they believe that the City's removal of the statue amounts to viewpoint discrimination against *them*. When standing is contested, the appropriate inquiry is whether the interest is cognizable in the abstract, and then, whether such interest is concrete and particularly felt by those bringing suit; if the interest alleged is both cognizable and particularly felt it is an injury in fact.[41] "[T]he injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."[42]

Although an intangible interest, such as that of free speech, satisfies the concreteness

---

[37] *McMahon v. Fenves*, 2018 WL 3118692 (W.D. Tex. June 25, 2018) citing *Spokeo*, 136 S.Ct. at 1548.
[38] *Id.*
[39] *Id.* Citing *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130.
[40] *Id.*
[41] *Id.* Citing *Lujan*, 504 U.S. at 563, 112 S.Ct. 2130
[42] *Id.*

requirement[43] it is not enough—the interest must also be particularized.[44]

**2.      Particularized Interest**

Plaintiff's claim of a particularized injury seems to be that the City discriminated against their unpopular political viewpoint when it removed the statue simply because the statue and cannon align with their political viewpoint. There is no allegation, nor evidence, that the City has taken direct action against Plaintiffs or prevented Plaintiffs from expressing their views.

Subjective ideological interests—no matter how deeply felt—are not enough to confer standing.[45] Our system of governance assigns the vindication of value preferences to the democratic political process, not the judicial process,[46] because limiting the right to sue to those most immediately affected "who have a direct stake in the outcome" prevents judicial review "at the behest of organizations who seek to do no more than vindicate their own value preferences."[47] Plaintiffs seek to do just that. Plaintiffs may be deeply attached to the values embodied by the Confederate statue but neither their deeply held views nor their organizational dedication to upholding such viewpoints transform an abstract ideological interest in preserving the Confederate legacy into a particularized injury.[48] The alleged free-speech injury of Plaintiffs, while perhaps cognizable in the abstract, is not an *injury in fact.*[49]

Plaintiffs' reliance upon *National Endowment for the Arts v. Finley*[50] is completely misplaced. In that case, artists sued on a theory of viewpoint discrimination when they were

---

[43] *Id.* Citing *Spokeo*, 136 S.Ct. at 1549 (citing *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)).
[44] *Id.*
[45] *Id.* Citing *Sierra Club v. Morton*, 405 U.S. 727, 729–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).
[46] *Id.* Citing *Lujan*, 504 U.S. at 576, 112 S.Ct. 2130,
[47] *Id.* Citing *Sierra Club*, 405 U.S. at 740, 92 S.Ct. 1361.
[48] *McMahon v. Fenves*, 2018 WL 3118692 (W.D. Tex. June 25, 2018).
[49] *Id.*
[50] *National Endowment for the Arts v. Finley,* 524 U.S. 569, 577, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998).

denied grant funding by the National Endowment for the Arts.[51] In the instant case, Plaintiffs have not sought funding nor have Plaintiffs been denied anything. Plaintiffs seek to control the government's speech and to compel the government speech to conform to their views. Likewise, in *Rosenberger v. Rector & Visitors of Univ. of Virginia*, a religious student organization was denied funding by a state university to publish a religious magazine.[52] These cases bear out what the court concluded in *Lujan*: when "the plaintiff himself is an object of the [government's] action ... there is ordinarily little question that the action or inaction has caused him injury." 504 U.S. at 561–62, 112 S.Ct. 2130. Here, however, Plaintiffs are not the subject of the governmental action. Plaintiffs have failed to show any connection to the statue in question other than a preference that it remains on display. The display or non–display of the statue in question, representing a viewpoint with which Plaintiffs agree, does not equate to an exercise of their First Amendment rights.[53] In fact, Plaintiffs do not allege that they were prevented from speaking at all. Far from bolstering their argument, these cases cited above illustrate a fundamental defect in this case—a general action taken by the City to remove an inanimate object, which bears no relation to Plaintiffs other than a shared ideological interest, is not an action taken against Plaintiffs.[54] Plaintiffs have not alleged a sufficient injury in fact, and as such, lack standing to bring this lawsuit.

3.   **Tax Payer Standing**

Plaintiff Brewer has now alleged standing as a tax payer. Brewer contends that he is a resident taxpayer in the City of San Antonio who contests that the removal of the statue is

---

[51] *Id.*
[52] *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 827, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).
[53] *McMahon v. Fenves*, 2018 WL 3118692 (W.D. Tex. June 25, 2018).
[54] *Id.*

unconstitutional. Dk. 44, p. 11. Brewer contends that defendants "*have* expended taxpayer funds in the illegal removal." Id. (emphasis added).

The concept of taxpayer standing is a very limited one. The seminal case is *Flast v Cohen,* 392 U.S. 83, 88 S.Ct, 1942 (1968) in which the United States Supreme Court set forth narrow parameters for taxpayer standing in federal claims.

> Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . .Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction.[55]

Plaintiffs have plead no facts to support establish these parameters, nor is there any evidence they can proffer to meet this test. However, Plaintiff asserts his standing as a municipal taxpayer, and focuses on the language of the Fifth Circuit in *Ehm v San Antonio,* 269 Fed. App'x 375 (5th Cir. 2008).

In *Ehm*, the Fifth Circuit recognized a lesser standard for asserting taxpayer standing, holding that a municipal tax payer could have standing to *enjoin* the "'illegal use of the moneys of a municipal corporation,' relying on 'the peculiar relation of the corporate taxpayer to the corporation' to distinguish such a case from the general bar on taxpayer suits."[56] Of significance in the Ehm and the cases cited therein is the concept that the action for which a plaintiff could

---

[55] *Flast* at 102-103.
[56] *Ehm* at 1865 (quoting *Frothingham v. Mellon,* 262 U.S. 447, 486-87, 43 S.Ct. 597, 67 L.Ed. 1078 (1923)); *see also ASARCO Inc. v. Kadish,* 490 U.S. 605, 613-14, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (opinion of Kennedy, J.) (recognizing distinction between federal and state taxpayer standing and municipal taxpayer standing).

have taxpayer standing is to enjoin the expenditure of funds. This implies that the action must relate to future or ongoing expenditures, as expenditures that have already occurred cannot be enjoined.

In the present case, Plaintiffs' live pleading does not seek injunctive relief; it does not seek to enjoin the expenditure of taxpayer monies into the future. Moreover, there is no evidence that the City is currently expending taxpayer funds in relation to the statue nor any evidence of intended future expenditures. The monument was removed almost one year ago. Funds spent on the removal have been spent and cannot be enjoined. Plaintiffs have no right to recovery of those funds. Thus, Plaintiff Brewer does enjoy taxpayer standing.

**4.     Organizational Standing**

There are two ways for an organization to demonstrate standing.[57] First, the organization can assert representational standing on behalf of its members.[58] An association has standing to bring a suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.[59] Second, an organization may have standing on its own behalf.[60] To establish standing on its own, the organization must show that it has constitutional standing in the same manner as any individual.[61] For the same reasons set forth above, Plaintiff, Texas Division, Sons of the Confederacy have failed in the instant case both to allege sufficient facts or

---

[57] *Patterson v Rawlings,* 287 F. Supp. 3d 632 (N.D. Tex. 2018).
[58] *Id*.
[59] *Id*. citing *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827–28 (5th Cir. 1997) ).
[60] *Patterson v Rawlings,* 287 F. Supp. 3d 632 (N.D. Tex. 2018).
[61] *Id*. citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

adduce any summary judgment evidence showing that its members have standing or that the organization itself has standing to assert any cause of action alleged in their lawsuit. Accordingly, the Court should grant summary judgment.

Intentional Torts

As no Plaintiff has plead facts sufficient to support standing, or alternatively, as there is no evidence to establish any Plaintiff has standing to bring this suit, Plaintiffs' claims should be dismissed.

**C.    Plaintiffs' claims should be dismissed as there is no evidence to support each element of those claims.**

**1.    Free Speech Claim**

Plaintiffs assert that removing the monument is somehow a suppression of their free *Grove City, Utah v Summum*, 555 U.S. 460, 129 S.Ct. 1125 (2009). In *Summum*, the Supreme Court recognized a city's right exercise government speech, and that such speech is not subject to scrutiny of the Free Speech Clause. In that case, the City refused to allow a private group to erect a religious monument in a city park. The Court held that in allowing placement of monuments in public parks, a city is exercising its government speech, that it "does so because it wishes to convey some thought or instill some feeling in those who see the structure." [62] "The Court further held that a government entity "is entitled to say what it wishes" and "select the views it wants to express."[63]  In a similar manner, the removal of a monument is also government speech and therefore exempt from First Amendment scrutiny.[64] While the will of the City in the 1890's may have been to recognize Confederate veterans through the erection of the

---

[62] *Summum* at 470.
[63] Id.
[64] *Monumental Task Comm. Inc. v Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016); aff'd 678 F. App'x 250 *5th Cir. 2017).

monument, the government speech of the City today is not to express a similar message. This in no way hinders Plaintiffs' exercise of their own free speech rights. In fact, Plaintiffs' suit is an attempt for Plaintiffs to improperly regulate the City's free speech.

To the extent that Plaintiffs contend that their free speech has been abridged under the concept of viewpoint discrimination, Defendants incorporate herein the arguments asserted *supra*. There is no legal theory of abridgement of free speech upon which Plaintiffs can base a cause of action, nor is there any evidence to support such a claim. As such, Defendants are entitled to dismissal of this claim.

**2.    Texas Antiquities Code**

The monument in question, including the cannon and time capsule, are not "landmarks" as that term is defined by the TEX. NAT. RES. CODE ANN. or by the TEXAS ADMIN. CODE, and, therefore, Plaintiffs' claims asserted under the Texas Antiquities Code fail and the Court should grant summary judgment.

TEXAS NATURAL RESOURCES CODE §191.051(b)(2), vests in the Texas Historical Commission the responsibility of designating "state archeological landmarks".[65] A landmark designation by the Texas Historical Commission must be made before the Antiquities Code is applicable. Only after such a designation is made, does Tex. NAT. RES. CODE ANN. §191.131 of the Antiquities Code of Texas require that a permit be obtained before any operations may be conducted on the landmark.[66] Since there is no evidence that the confederate statue, to include the cannon and time capsule, was never designated as a state landmark, the Texas Historical

---

[65] *Board of Regents v. Walker County Historical Comm.*, 608 S.W 2d 252 (Tex. App.—Houston [14th Dist] 1980).
[66] *Id.*

Commission is not authorized nor required to issue a permit. The Texas Supreme Court[67], in construing the former Antiquities Code, 1969 Tex.Gen.Laws, ch. 2, s 4, at 99, which is similar to TEX. NAT. RES. CODE ANN. §191.051  now in effect, stated:

> The Antiquities Code does not give the Antiquities Committee authority over buildings in the National Register; instead, the Code only gives the Committee authority over buildings which the Committee has designated as a State Archeological Landmark. Since the Committee has not designated the buildings as State Archeological Landmarks, the College District does not need the Committee's permission before demolishing the buildings.

As there is no evidence to support a claim under the Texas Antiquities Code, Defendants are entitled to summary judgment as a matter of law.

**3.      Charitable Trust/Charitable Gift**

Plaintiffs' next cause of action is ambiguous at best.  Plaintiffs appear to contend they have standing to sue to enforce a charitable trust.  Plaintiffs appear further to be contending that the gift of cannon to the City of San Antonio by the U.S. Congress was a "charitable gift," but plead no facts to support this contention.  The bulk of Plaintiffs' pleadings on this claim is a recitation of a litany of cases involving actual charitable trusts – a litany of cases wholly inapplicable to any fact in this lawsuit.  In the cases cited, actual trust or endowments had been established.

In the present case, the only evidence is a recitation in Plaintiffs' own alleged records that cannon were gifted to the City "for the benefit of the confederate camp." Dk. #44, p. 7. There is no evidence of the creation of a trust.  There is no evidence of the U.S. Congress setting forth any parameters, duties, or obligations on the City associated with the alleged gift.  There is no

---

[67] *Id.* citing <u>Texas Antiquities v. Dallas Cty. Community</u>, 554 S.W.2d 924, 926 (Tex.1977).

evidence of the creation of any trustee obligations.  Even assuming for argument sake that the U.S. Congress did gift these cannons to the City for the "benefit of the confederate camp," there is no evidence of what that benefit was to be.  There is certainly no evidence that the gift to the City must remain in perpetuity in Travis Park.  There is no evidence that the gift prohibited the City from putting the cannon in storage or from placing the cannon elsewhere.  In short, there is no evidence that a "charitable trust" existed or that the Defendants breached any such trust.  Defendants are entitled to summary judgment as a matter of law.

To the extent that Plaintiffs are attempting to make this claim in connection with the statue and/or the alleged time capsule, the evidence is equally absent.  There is no evidence that in placing the statue in Travis Park the City was accepting the statue or time capsule "in trust."  Plaintiffs have no evidence that the Daughters of the Confederacy created any trust documents outlining any obligations related to the statue on the part of the City.  Plaintiffs have no evidence that the statue or time capsule were given to the City "in trust."  There is no evidence that the donation of the statue and time capsule were contingent only to their continued display in Travis Park.  There is no evidence that the Texas Division, Sons of Confederate Veterans ever had any ownership interest in the statue or the time capsule, nor any evidence that they are the successor interest in the group that donated these items to the City.  As such, Defendants are entitled to summary judgment as a matter of law.

**D.    This Court lacks jurisdiction over Plaintiffs' claims for conversion.**

The Texas Tort Claims Act (TTCA) provides a limited waiver of sovereign immunity and allows suits against governmental units only in certain narrow circumstances.[68]  One of the

---

[68] *Texas Dep't Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

TTCA's exceptions from waiver of immunity is the intentional-tort exception: the TTCA does not apply to a claim "arising out of assault, battery, false imprisonment, or *any other intentional tort*…."[69] Plaintiffs' claim for conversion, therefore, fails because it asserts intentional, rather than negligent, conduct.[70]

If the Court is disinclined to dismiss this intentional tort under 101.057, Defendants further assert the protections of Tex. Civ. Prac. & Rem. Code Section 101.106(f). Under this provision, suit against an employee in their official capacity shall be dismissed unless the pleading is amended to dismiss the employee and name the government entity. As Plaintiffs have already amended to include the City as a named Defendant, the claims against these defendants must be dismissed.

### III.   CONCLUSION

Defendants are entitled to summary judgment as a matter of law or, alternatively, dismissal of Plaintiffs' claims under Fed. R. Civ. Pro. 12. Plaintiffs have failed to plead facts sufficient to support standing to bring the alleged causes of action, nor can they proffer evidence to support any standing theory. Plaintiffs further have no evidence to establish each element of the causes of action asserted. Finally, as to Plaintiffs' claims of conversion, under the Texas Tort Claims Act, the Court lacks jurisdiction over such claim.

WHEREFORE, PREMISES CONSIDERED, DEFENDANTS RON NIRENBERG, in his Official Capacity as Mayor of the City of San Antonio, and ROBERT TREVINO, WILIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, and JOHN COURAGE, and CLAYTON PERRY, in their official

---

[69] TEX. CIV. PRAC. & REM. CODE § 101.057(2).(emphasis added).
[70] *City of Houston v. Petroleum Traders Corp.,* 261 S.W.3d 350 (Tex. App.—Houston [14th Dist.] 2008); *Harris County v. Cabazos*, 177 S.W. 3d 105, 111 (Tex. App. – Houston [1st Dist.] 2005, no pet.).

capacities as Members of the San Antonio City Council, pray this Court grant this Motion for Summary Judgment or alternatively Motion to Dismiss in all things, and for such other and further relief, both in law and in equity, to which these Defendants may be entitled.

Respectfully Submitted,

CITY OF SAN ANTONIO
Office of the City Attorney
Litigation Division
Frost Bank Tower
100 W. Houston St., 18th Floor
San Antonio, Texas  78205

/s/Debora Lynne Klein
Deborah Lynne Klein
Deputy City Attorney
Bar No:  11556750
(210) 207-8919/ (210) 207-4357 Fax
deborah.klein@sanantonio.gov
*ATTORNEY FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send notification of such filing to the following on July 16, 2018:

Kirk David Lyons
PO Box 1235
Black Mountain, North Carolina 28711

David D. Vandenberg
Vandenberg Law, PLLC
3603D Las Colinas Dr.
Austin, Texas 782731

/s/Deborah Lynne Klein
DEBORAH LYNNE KLEIN