44



# City of San Antonio

## Legislation Details (With Text)

| | |
|---|---|
| **File #:** | 17-4900 |
| **Type:** | Staff Briefing - With Ordinance |
| | **In control:**   City Council A Session |
| **On agenda:** | 8/31/2017 |
| **Title:** | An Ordinance authorizing: A) the removal and storage of the Confederate Soldier monument and two cannons located in Travis Park; B) the City to enter into contracts for the removal, transportation, and storage of the Confederate Soldier monument and two cannons in an amount not to exceed $150,000.00; C) the City to enter into a donation agreement with a nonprofit involved in historic preservation or education for the acceptance of the Confederate Soldier Monument and two cannons; and D) a modification to Chapter 35-640 and 35-803 of the Unified Development Code to allow for the above. [Lori Houston, Assistant City Manager; John Jacks, Director, Center City Development & Operations] |
| **Sponsors:** | |
| **Indexes:** | |
| **Code sections:** | |
| **Attachments:** | 1. Draft Ordinance, 2. Ordinance 2017-08-31-0598 |

| Date | Ver. | Action By | Action | Result |
|---|---|---|---|---|
| 8/31/2017 | 1 | City Council A Session | Motion to Cont/Post | Fail |

**DEPARTMENT:** Center City Development and Operations Department

**DEPARTMENT HEAD:** John Jacks

**COUNCIL DISTRICTS IMPACTED:** City Council District 1

**SUBJECT:** Travis Park Monuments

**SUMMARY:**

This ordinance authorizes the following:

1. City to arrange for the removal and storage of the Confederate Soldier monument and two cannons located in Travis Park.
2. City Council allowing a modification to the process outlined in Chapter 35-640 and 35-803 of the Unified Development Code that provides the Historic and Design Review Commission review authority of changes to City Parks.
3. City Council appropriation of funds in an amount not to exceed $150,000 for the purpose of the following:

   a. removing the monument and cannons;

   b. transporting the monument and cannons to a storage facility; and

**COSA 000771**



File #: 17-4900, Version: 1

    c.  logistical support that is necessary for the removal and relocation of the monument and cannons.

4. City to execute professional services contract with a contractor for the purpose of removing and relocating the monument and cannons.
5. City to negotiate and execute a donation agreement with a non-profit involved in historic preservation or education for the acceptance of the Confederate Soldier monument and two cannons.

## BACKGROUND:

Travis Park is one of San Antonio's oldest parks. The land originally belonged to Samuel Maverick who donated the property to the City for use as a park upon his death in 1870. By 1876, the City had made upgrades to the park, including planting grass, installing painted wooden benches, and installing a fence to enclose the area. In 1892, two cannons reportedly used during the Civil War battle at Val Verde, New Mexico, were given to the City by Major Teel and installed in the park.

Prior to 1899, Travis Park lacked a formal design and was densely vegetated. The development of Travis Park into a formal urban square was a result of the City Beautiful movement which sought to integrate beauty and order into the urban landscape during the 1890s and early 1900s. Centrally-located sculptures and monuments in public squares were popular during this time.  In the south during this timeframe, monuments to the confederacy became increasingly common in public spaces.

San Antonio's Confederate monument was funded by the Barnard E. Bee Chapter of the Daughters of the Confederacy who raised $3,000 for the effort. The ceremony for the laying of the foundation stone on June 4, 1899, and the monument was completed in early 1900.  The 40-foot tall monument is positioned centrally within the park with planters and sidewalks radiating to the perimeter of the park. It was designed by Miss Virginia Montgomery of New Orleans and constructed by sculptor Frank Teich, a German-born sculptor who operated a granite quarry and memorial company in Llano, Texas.

In 2013, the City made additional improvements to the park including repairs and new amenities to better engage the public. The City provides regular programming in the park and it serves as a community gathering space and is regularly enjoyed by family and friends through specialty programming like Movies by Moonlight, Fitness in the Park, Jazz Alive, and the food truck program.  The July 25th Movies by Moonlight event had 3,500 attendees.

Over the past several years there has been a national debate over public memorials depicting Confederate figures.  The recent and devastating incident in Charlottesville, Virginia, has elevated the debate.  Cities and universities across the United States have removed and relocated their Confederate memorials to museums and other places.  The City of San Antonio wants to keep Travis Park a community gathering area where all can feel safe and welcomed.  The Confederate monument and cannons in Travis Park should be removed and ultimately placed in a location where the historical significance can be communicated in an instructive and not divisive way.

## ISSUE:

Staff is recommending removal of both the Confederate monument and the two cannons and their relocation to an adequate storage facility.  Staff is also recommending that the items be donated to a non-profit that will place

powered by Legistar™

COSA 000772

**File #:** 17-4900, **Version:** 1

them in the appropriate historical context.

**ALTERNATIVES:**

The City could keep the monument and cannons in Travis Park.

**FISCAL IMPACT:**

This item appropriates funding in an amount not to exceed $150,000 for the purpose of removing the monument and cannons and transporting them to a storage facility. The funding will also address any security or logistical support that is necessary for the removal and relocation of the monument and cannons. Funding is available in the Facilities Services Fund FY 2017 Adopted Budget.

**RECOMMENDATION:**

Staff recommends approval.

COSA 000773

70

33

## PROFESSIONAL SERVICES AGREEMENT

| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

This Agreement is entered into by and between the City of San Antonio, a Texas Municipal Corporation ("City") and Vault Fine Art Services LLC ("Contractor"), both of which may be referred to herein collectively as the "Parties."

The Parties hereto severally and collectively agree, and by the execution hereof are bound, to the mutual obligations herein contained and to the performance and accomplishment of the tasks hereinafter described.

### I. DEFINITIONS

As used in this Agreement, the following terms shall have meanings as set out below:

1.1    "City" is defined in the preamble of this Agreement and includes its successors and assigns.

1.2    "Contractor" is defined in the preamble of this Agreement and includes its successors.

1.3    "Manager" shall mean the Assistant City Manager of the City of San Antonio that is overseeing this matter.

### II. TERM

2.1    Unless sooner terminated in accordance with the provisions of this Agreement, the term of this Agreement shall commence on August 31, 2017 and terminate on the earlier of following: the completion of services as set out in Attachment I, or on September 30, 2017.

2.2    If funding for the entire Agreement is not appropriated at the time this Agreement is entered into, City retains the right to terminate this Agreement at the expiration of each of City's budget periods, and any additional contract period beyond the initial term set forth in 2.1 is subject to and contingent upon subsequent appropriation.

2.3    It is expressly understood and agreed by the City and Contractor that City's obligations under this Agreement are contingent upon the appropriation of funding by the San Antonio City Council. Lack of funding is not and shall not be considered a breach of this Agreement. If City does not receive adequate funds to pay obligations under this Agreement, then this Agreement shall terminate and neither Contractor nor City shall have any further obligations hereunder. Notwithstanding anything to the contrary in this Section 2.3 or Section 2.2, if Contractor has performed services as described in Attachment I, City shall pay for all services provided.

### III.    SCOPE OF SERVICES

3.1    Contractor agrees to provide the services described in Attachment I, entitled Scope of Services, in exchange for the compensation described in Article IV. Compensation.

3.2    All work performed by Contractor hereunder shall be performed to the satisfaction of Manager. The determination made by Manager shall be final, binding and conclusive on all Parties hereto. City shall be under no obligation to pay for any work performed by Contractor, which is not satisfactory to Manager. City shall have the right to terminate this Agreement, in accordance with Article VII. Termination, in whole or in part, should Contractor's work not be satisfactory to

{067.00190825.2}

COSA 000400

71

Manager; however, City shall have no obligation to terminate and may withhold payment for any unsatisfactory work, as stated herein, even should City elect not to terminate. City shall notify Contractor in writing of any decision to withhold payment. Should City elect to terminate, it will do so in accordance with the provisions for Defaults with Opportunity for Cure contained in this Agreement.

## IV. COMPENSATION TO TIP

4.1     In consideration of Contractor's performance in a satisfactory and efficient manner, as determined solely by the Manager, of all services and activities set forth in this Agreement, City agrees to pay Contractor a total amount not to exceed ONE HUNDRED FORTY TWO THOUSAND SIX HUNDRED FIFTY FIVE DOLLARS AND NO/100THS ($142,655.00) as total compensation.

4.2     Contractor shall submit invoices to City, in a form acceptable to City, which City shall pay within 30 days of receipt and approval by Director. Invoices shall be submitted to: City of San Antonio, Accounts Payable, P.O. Box 839976, San Antonio, Texas 78283-3976, with a copy to City of San Antonio, P.O. Box 839966, San Antonio, Texas 78283-3966.

4.3     No additional fees or expenses of Contractor shall be charged by Contractor nor be payable by City. The parties hereby agree that all compensable expenses of Contractor have been provided for in the total payment to Contractor as specified in section 4.1 above. Total payments to Contractor cannot exceed that amount set forth in section 4.1 above, without prior approval and agreement of all parties, evidenced in writing and approved by the City.

4.4     Final acceptance of work products and services require written approval by City. The approving official shall be Manager. Payment will be made to Contractor following written approval of the final work products and services by Manager. City shall not be obligated or liable under this Agreement to any party, other than Contractor, for the payment of any monies or the provision of any goods or services.

## V. OWNERSHIP OF DOCUMENTS

5.1     Any and all writings, documents or information in whatsoever form and character produced by Contractor pursuant to the provisions of this Agreement is the exclusive property of City without limitation; and no such writing, document or information shall be the subject of any copyright or proprietary claim by Contractor.

5.2     Contractor understands and acknowledges that as the exclusive owner of any and all such writings, documents and information, City has the right to use all such writings, documents and information as City desires, without restriction.

5.3     No reports, information, designs, data nor any other documentation developed by, given to, prepared by, or assembled by Contractor under this Agreement shall be disclosed or made available to any individual or organization by Contractor without the express prior written approval of City. In the event Contractor receives a request to disclose or produce documents, Contractor shall inform the City immediately for the purpose of receiving direction regarding the manner of processing.

5.4     Contractor shall comply with laws, regulations and rules pertaining to confidentiality and shall establish a method to secure the confidentiality of documents and information that Contractor may have access to, in accordance with the applicable federal, state, and local laws, rules and regulations. This provision shall not be construed as limiting City's right of access to records or other information under this Agreement.

{067.00190825.2}

## VI. RECORDS RETENTION

6.1     Contractor and its subcontractors, if any, shall properly, accurately and completely maintain all documents, papers, and records, and other evidence pertaining to the services rendered hereunder (hereafter referred to as "documents"), and shall make such materials available to the City at their respective offices, at all reasonable times and as often as City may deem necessary during the Agreement period, including any extension or renewal hereof, and the record retention period established herein, for purposes of audit, inspection, examination, and making excerpts or copies of same by City and any of its authorized representatives.

6.2     Contractor shall retain any and all documents produced as a result of services provided hereunder for a period of four (4) years (hereafter referred to as "retention period") from the date of termination of the Agreement. If, at the end of the retention period, there is litigation or other questions arising from, involving or concerning this documentation or the services provided hereunder, Contractor shall retain the records until the resolution of such litigation or other such questions. Contractor acknowledges and agrees that City shall have access to any and all such documents at any and all times, as deemed necessary by City, during said retention period. City may, at its election, require Contractor to return the documents to City at Contractor's expense prior to or at the conclusion of the retention period. In such event, Contractor may retain a copy of the documents at its sole cost and expense.

6.3     Contractor shall notify City, immediately, in the event Contractor receives any requests for information from a third party, which pertain to the documentation and records referenced herein. Contractor understands and agrees that City will process and handle all such requests.

## VII. TERMINATION

7.1     For purposes of this Agreement, "termination" of this Agreement shall mean termination by expiration of the Agreement term as stated in Article II. Term, or earlier termination pursuant to any of the provisions hereof.

7.2     Termination Without Cause. This Agreement may be terminated by City without cause upon 30 calendar days' written notice, which notice shall be provided in accordance with Article VIII. Notice.

7.3     Termination For Cause. Upon written notice, which notice shall be provided in accordance with Article VIII. Notice, City may terminate this Agreement as of the date provided in the notice, in whole or in part, upon the occurrence of one (1) or more of the following events, each of which shall constitute an Event for Cause under this Agreement:

  7.3.1   The sale, transfer, pledge, conveyance or assignment of this Agreement without prior approval, as provided in Article XII. Assignment and Subcontracting; or
  7.3.2   Any material breach of the terms of this Agreement, as determined solely by City.

7.4     Defaults With Opportunity for Cure. Should Contractor default in the performance of this Agreement in a manner stated in this section 7.4 below, same shall be considered an event of default. City shall deliver written notice of said default specifying such matter(s) in default. Contractor shall have 30 calendar days after receipt of the written notice, in accordance with Article VIII. Notice, to cure such default. If Contractor fails to cure the default within such 30 day cure period, City shall have the right, without further notice, to terminate this Agreement in whole or in part as City deems appropriate, and to contract with another consultant to complete the work

{067.00190825.2}

COSA 000402

73

required in this Agreement. City shall also have the right to offset the cost of said new Agreement with a new consultant against Contractor's future or unpaid invoice(s), subject to the duty on the part of City to mitigate its losses to the extent required by law.

7.4.1   Bankruptcy or selling substantially all of company's assets;

7.4.2   Failing to perform or failing to comply with any covenant herein required; or

7.4.3   Performing unsatisfactorily as determined by Manager.

7.5   Termination By Law.  If any state or federal law or regulation is enacted or promulgated which prohibits the performance of any of the duties herein, or, if any law is interpreted to prohibit such performance, this Agreement shall automatically terminate as of the effective date of such prohibition.

7.6   Regardless of how this Agreement is terminated, Contractor shall effect an orderly transfer to City or to such person(s) or firm(s) as the City may designate, at no additional cost to City, all completed or partially completed documents, papers, records, charts, reports, and any other materials or information produced as a result of or pertaining to the services rendered by Contractor, or provided to Contractor, hereunder, regardless of storage medium, if so requested by City, or shall otherwise be retained by Contractor in accordance with Article VI. Records Retention.  Any record transfer shall be completed within thirty (30) calendar days of a written request by City and shall be completed at Contractor's sole cost and expense. Payment of compensation due or to become due to Contractor is conditioned upon delivery of all such documents, if requested by City.

7.7    Within forty-five (45) calendar days of the effective date of completion, or termination or expiration of this Agreement, Contractor shall submit to City its claims, in detail, for the monies owed by City for services performed under this Agreement through the effective date of termination. Failure by Contractor to submit its claims within said forty-five (45) calendar days shall negate any liability on the part of City and constitute a **Waiver** by Contractor of any and all right or claims to collect moneys that Contractor may rightfully be otherwise entitled to for services performed pursuant to this Agreement.

7.8   Upon the effective date of expiration or termination of this Agreement, Contractor shall cease all operations of work being performed by Contractor or any of its subcontractors pursuant to this Agreement.

7.9   Termination not sole remedy.   In no event shall City's action of terminating this Agreement, whether for cause or otherwise, be deemed an election of City's remedies, nor shall such termination limit, in any way, at law or at equity, City's right to seek damages from or otherwise pursue Contractor for any default hereunder or other action.

### VIII. NOTICE

Except where the terms of this Agreement expressly provide otherwise, any election, notice or communication required or permitted to be given under this Agreement shall be in writing and deemed to have been duly given if and when delivered personally (with receipt acknowledged), or three (3) days after depositing same in the U.S. mail, first class, with proper postage prepaid, or upon receipt if sending the same by certified mail, return receipt requested, or upon receipt when sent by a commercial courier service (such as Federal Express or DHL Worldwide Express) for expedited delivery to be confirmed in writing by such courier, at the addresses set forth below or to such other address as either party may from time to time designate in writing.

If intended for City, to:

City of San Antonio
Attn: Lori Houston

If intended for Contractor to:

Vault Fine Art Services, LLC
Attn:

{067.00190825.2}

COSA 000403

74

Assistant City Manager
100 Military Plaza
San Antonio, Texas 78205

PO Box 7756
Austin, Texas 78760

## IX. NON-DISCRIMINATION

Non-Discrimination. As a party to this contract, Contractor understands and agrees to comply with the Non-Discrimination Policy of the City of San Antonio contained in Chapter 2, Article X. of the City Code and further, shall not discriminate on the basis of race, color, religion, national origin, sex, sexual orientation, gender identity, veteran status, age or disability, unless exempted by state or federal law, or as otherwise established herein.

## X. INSURANCE

10.1   Prior to the commencement of any work under this Agreement, Contractor shall furnish copies of all required endorsements and completed Certificate(s) of Insurance to the City of San Antonio, which shall be clearly labeled "Removal of Confederate Monument from Travis Park" in the Description of Operations block of the Certificate. The Certificate(s) shall be completed by an agent and signed by a person authorized by that insurer to bind coverage on its behalf.  The City will not accept a Memorandum of Insurance or Binder as proof of insurance. The certificate(s) must have the agent's signature and phone number, and be mailed, with copies of all applicable endorsements, directly from the insurer's authorized representative to the City. The City shall have no duty to pay or perform under this Agreement until such certificate and endorsements have been received and approved by the City of San Antonio Office of Risk Management. No officer or employee, other than the City's Risk Manager, shall have authority to waive this requirement.

10.2   The City reserves the right to review the insurance requirements of this Article during the effective period of this Agreement and any extension or renewal hereof and to modify insurance coverages and their limits when deemed necessary and prudent by City's Risk Manager based upon changes in statutory law, court decisions, or circumstances surrounding this Agreement.  In no instance will City allow modification whereby City may incur increased risk.

10.3   Contractor's financial integrity is of interest to the City; therefore, subject to Contractor's right to maintain reasonable deductibles in such amounts as are approved by the City, Contractor shall obtain and maintain in full force and effect for the duration of this Agreement, and any extension hereof, at Contractor's sole expense, insurance coverage written on an occurrence basis, unless otherwise indicated, by companies authorized to do business in the State of Texas and with an A.M Best's rating of no less than  A- (VII), in the following types and for an amount not less than the amount listed below:

| TYPE | AMOUNTS |
|------|---------|
| | |
| 1.  Workers' Compensation | Statutory |
| 2.  Employers' Liability | $1,000,000/$1,000,000/$1,000,000 |
| | |

{067.00190825.2}

COSA 000404

75

| 3. Commercial General Liability Insurance to include coverage for the following:<br>    a. Premises/Operations<br>    b. Products/Completed Operations<br>    c. Personal/Advertising Injury<br>    d. Environmental Impairment/ Impact – sufficiently broad to cover disposal liability.<br>    g. Explosion, Collapse, Underground | For Bodily Injury and Property Damage of $1,000,000 per occurrence; $2,000,000 General Aggregate, or its equivalent in Umbrella or Excess Liability Coverage |
|---|---|
| 4. Business Automobile Liability<br>    a. Owned/leased vehicles<br>    b. Non-owned vehicles<br>    c. Hired Vehicles | Combined Single Limit for Bodily Injury and Property Damage of $1,000,000 per occurrence |
| 5. Property Insurance: For physical damage to the property of LESSEE, including improvements and betterment to the Leased Premises | Coverage for replacement value with a minimum co-insurance factor of eighty percent (80%) of the cost of Contractor's property |
| 6. Crime Liability: Coverage for losses due to employee dishonesty, credit card forgery, computer fraud and theft, and the disappearance or destruction of property | All Risk Policy written on an occurrence basis for 100% replacement cost |

10.4    Contractor agrees to require, by written contract, that all subcontractors providing goods or services hereunder obtain the same insurance coverages required of Contractor herein, and provide a certificate of insurance and endorsement that names the Contractor and the City as additional insureds. Contractor shall provide the City with said certificate and endorsement prior to the commencement of any work by the subcontractor. This provision may be modified by City's Risk Manager, without subsequent City Council approval, when deemed necessary and prudent, based upon changes in statutory law, court decisions, or circumstances surrounding this agreement. Such modification may be enacted by letter signed by City's Risk Manager, which shall become a part of the contract for all purposes.

10.5    As they apply to the limits required by the City, the City shall be entitled, upon request and without expense, to receive copies of the policies, declaration page, and all endorsements thereto and may require the deletion, revision, or modification of particular policy terms, conditions, limitations, or exclusions (except where policy provisions are established by law or regulation binding upon either of the parties hereto or the underwriter of any such policies). Contractor shall be required to comply with any such requests and shall submit a copy of the replacement certificate of insurance to City at the address provided below within 10 days of the requested change. Contractor shall pay any costs incurred resulting from said changes.

City of San Antonio

{067.00190825.2}

COSA 000405

7/6

Attn: Center City Development and Operations
P.O. Box 839966
San Antonio, Texas 78283-3966

10.6    Contractor agrees that with respect to the above required insurance, all insurance policies are to contain or be endorsed to contain the following provisions:

- Name the City, its officers, officials, employees, volunteers, and elected representatives as <u>additional insureds</u> by endorsement, as respects operations and activities of, or on behalf of, the named insured performed under contract with the City, with the exception of the workers' compensation and professional liability polices;

- Provide for an endorsement that the "other insurance" clause shall not apply to the City of San Antonio where the City is an additional insured shown on the policy;

- Workers' compensation, employers' liability, general liability and automobile liability policies will provide a waiver of subrogation in favor of the City.

- Provide advance written notice directly to City of any suspension, cancellation, non-renewal or material change in coverage, and not less than ten (10) calendar days advance notice for nonpayment of premium.

10.7    Within five (5) calendar days of a suspension, cancellation or non-renewal of coverage, Contractor shall provide a replacement Certificate of Insurance and applicable endorsements to City. City shall have the option to suspend Contractor's performance should there be a lapse in coverage at any time during this Agreement. Failure to provide and to maintain the required insurance shall constitute a material breach of this Agreement.

10.8    In addition to any other remedies the City may have upon Contractor's failure to provide and maintain any insurance or policy endorsements to the extent and within the time herein required, the City shall have the right to order Contractor to stop work hereunder, and/or withhold any payment(s) which become due to Contractor hereunder until Contractor demonstrates compliance with the requirements hereof.

10.9    Nothing herein contained shall be construed as limiting in any way the extent to which Contractor may be held responsible for payments of damages to persons or property resulting from Contractor's or its subcontractors' performance of the work covered under this Agreement.

10.10   It is agreed that Contractor's insurance shall be deemed primary and non-contributory with respect to any insurance or self-insurance carried by the City of San Antonio for liability arising out of operations under this Agreement.

10.11   It is understood and agreed that the insurance required is in addition to and separate from any other obligation contained in this Agreement and that no claim or action by or on behalf of the City shall be limited to insurance coverage provided.

{067.00190825.2}

COSA 000406



10.12 Contractor and any subcontractors are responsible for all damage to their own equipment and/or property.

## XI. INDEMNIFICATION

11.1 **CONTRACTOR covenants and agrees to FULLY INDEMNIFY, DEFEND and HOLD HARMLESS, the CITY and the elected officials, employees, officers, directors, volunteers and representatives of the CITY, individually and collectively, from and against any and all costs, claims, liens, damages, losses, expenses, fees, fines, penalties, proceedings, actions, demands, causes of action, liability and suits of any kind and nature, including but not limited to, personal or bodily injury, death and property damage, made upon the CITY directly or indirectly arising out of, resulting from or related to the negligence or misconduct of CONTRACTOR or its officers, agents employees, directors and representatives while in the exercise of the rights or performance of the duties under this Agreement. The indemnity provided for in this paragraph shall not apply to any liability resulting from the negligence of CITY, its officers or employees, in instances where such negligence causes personal injury, death, or property damage, or liability resulting from the CITY requesting CONTRACTOR to perform the Scope of Services as described in Attachment 1 to this Agreement. IN THE EVENT CONTRACTOR AND CITY ARE FOUND JOINTLY LIABLE BY A COURT OF COMPETENT JURISDICTION, LIABILITY SHALL BE APPORTIONED COMPARATIVELY IN ACCORDANCE WITH THE LAWS FOR THE STATE OF TEXAS, WITHOUT, HOWEVER, WAIVING ANY GOVERNMENTAL IMMUNITY AVAILABLE TO THE CITY UNDER TEXAS LAW AND WITHOUT WAIVING ANY DEFENSES OF THE PARTIES UNDER TEXAS LAW.**

11.2 The provisions of this INDEMNITY are solely for the benefit of the parties hereto and not intended to create or grant any rights, contractual or otherwise, to any other person or entity. CONTRACTOR shall advise the CITY in writing within 24 hours of any claim or demand against the CITY or CONTRACTOR known to CONTRACTOR related to or arising out of CONTRACTOR's activities under this AGREEMENT and shall see to the investigation and defense of such claim or demand at CONTRACTOR's cost. The CITY shall have the right, at its option and at its own expense, to participate in such defense without relieving CONTRACTOR of any of its obligations under this paragraph.

11.3 Defense Counsel – City shall have the right to select or to approve defense counsel to be retained by Contractor in fulfilling its obligation hereunder to defend and indemnify City, unless such right is expressly waived by City in writing. Contractor shall retain City approved defense counsel within seven (7) business days of City's written notice that City is invoking its right to indemnification under this Agreement. If Contractor fails to retain Counsel within such time period, City shall have the right to retain defense counsel on its own behalf, and Contractor shall be liable for all costs incurred by City. City shall also have the right, at its option, to be represented by advisory counsel of its own selection and at its own expense, without waiving the foregoing.

11.4 Employee Litigation – In any and all claims against any party indemnified hereunder by any employee of Contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation herein provided shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Contractor or any subcontractor under worker's compensation or other employee benefit acts.

## XII.   ASSIGNMENT AND SUBCONTRACTING

12.1 TIP shall supply qualified personnel as may be necessary to complete the work to be performed under this Agreement.  Persons retained to perform work pursuant to this Agreement shall be the

{067.00190825.2}

COSA 000407

78

employees or subcontractors of Contractor. Contractor, its employees or its subcontractors shall perform all necessary work.

12.2 Any work or services approved for subcontracting hereunder shall be subcontracted only by written contract and, unless specific waiver is granted in writing by the City, shall be subject to its terms to each and every provision of this Agreement. Compliance by subcontractors with this Agreement shall be the responsibility of Contractor. City shall in no event be obligated to any third party, including any subcontractor of Contractor, for performance of services or payment of fees. Any references in this Agreement to an assignee, transferee, or subcontractor, indicate only such an entity as has been approved by the City.

12.3 Except as otherwise stated herein, Contractor may not sell, assign, pledge, transfer or convey any interest in this Agreement, nor delegate the performance of any duties hereunder, by transfer, by subcontracting or any other means, without the consent of the City. As a condition of such consent, if such consent is granted, Contractor shall remain liable for completion of the services outlined in this Agreement in the event of default by the successor Contractor, assignee, transferee or subcontractor.

12.4 Any attempt to transfer, pledge or otherwise assign this Agreement without said written approval, shall be void ab initio and shall confer no rights upon any third person.  Should Contractor assign, transfer, convey, delegate, or otherwise dispose of any part of all or any part of its right, title or interest in this Agreement, City may, at its option, cancel this Agreement and all rights, titles and interest of Contractor shall thereupon cease and terminate, in accordance with Article VII. Termination, notwithstanding any other remedy available to City under this Agreement. The violation of this provision by Contractor shall in no event release Contractor from any obligation under the terms of this Agreement, nor shall it relieve or release Contractor from the payment of any damages to City, which City sustains as a result of such violation.

## XIII.    INDEPENDENT CONTRACTOR

Contractor covenants and agrees that it is an independent contractor and not an officer, agent, servant or employee of City; that Contractor shall have exclusive control of and exclusive right to control the details of the work performed hereunder and all persons performing same, and shall be responsible for the acts and omissions of its officers, agents, employees, contractors, subcontractors and consultants; that the doctrine of "respondeat superior" shall not apply as between City and Contractor, its officers, agents, employees, contractors, subcontractors and consultants, and nothing herein shall be construed as creating the relationship of employer-employee, principal-agent, partners or joint venturers between City and Contractor. The parties hereto understand and agree that the City shall not be liable for any claims which may be asserted by any third party occurring in connection with the services to be performed by the Contractor under this Agreement and that the Contractor has no authority to bind the City.

## XIV.    CONFLICT OF INTEREST

14.1 The Charter of the City of San Antonio and its Ethics Code prohibit a City officer or employee, as defined in Section 2-52 of the Ethics Code, from having a financial interest in any contract with the City or any City agency such as city owned utilities.  An officer or employee has a "prohibited financial interest" in a contract with the City or in the sale to the City of land, materials, supplies or service, if any of the following individual(s) or entities is a party to the contract or sale:

(i)  a City officer or employee;

(ii)   his parent, child or spouse;

{067.00190825.2}

COSA 000408

79

(iii) a business entity in which the officer or employee, or his parent, child or spouse owns (i) 10% or more of the voting stock or shares of the business entity, or (ii) 10% or more of the fair market value of the business entity;

(iv) a business entity in which any individual or entity above listed is a (i) subcontractor on a City contract, (ii) a partner, or (iii) a parent or subsidiary business entity.

14.2  Contractor warrants and certifies as follows:

(i) Contractor and its officers, employees and agents are neither officers nor employees of the City.

(ii) Contractor has tendered to the City a Contracts Disclosure Statement in compliance with the City's Ethics Code.

14.3  Contractor acknowledges that City's reliance on the above warranties and certifications is reasonable.

## XV.  AMENDMENTS

Except where the terms of this Agreement expressly provide otherwise, any alterations, additions, or deletions to the terms hereof, shall be effected by amendment, in writing, executed by both City and Contractor.

## XVI.  SEVERABILITY

If any clause or provision of this Agreement is held invalid, illegal or unenforceable under present or future federal, state or local laws, including but not limited to the City Charter, City Code, or ordinances of the City of San Antonio, Texas, then and in that event it is the intention of the parties hereto that such invalidity, illegality or unenforceability shall not affect any other clause or provision hereof and that the remainder of this Agreement shall be construed as if such invalid, illegal or unenforceable clause or provision was never contained herein; it is also the intention of the parties hereto that in lieu of each clause or provision of this Agreement that is invalid, illegal, or unenforceable, there be added as a part of the Agreement a clause or provision as similar in terms to such invalid, illegal or unenforceable clause or provision as may be possible, legal, valid and enforceable.

## XVII.  LICENSES/CERTIFICATIONS

Contractor warrants and certifies that Contractor and any other person designated to provide services hereunder has the requisite training, license and/or certification to provide said services, and meets all competence standards promulgated by all other authoritative bodies, as applicable to the services provided herein.

## XVIII.  COMPLIANCE

Contractor shall provide and perform all services required under this Agreement in compliance with all applicable federal, state and local laws, rules and regulations.

## XIX.  NONWAIVER OF PERFORMANCE

Unless otherwise specifically provided for in this Agreement, a waiver by either Party of a breach of any of the terms, conditions, covenants or guarantees of this Agreement shall not be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, condition, covenant or guarantee herein contained. Further, any failure of either Party to insist in any one or more cases upon the strict performance of any of the covenants of this Agreement, or to exercise any option herein contained, shall in no event be construed as a waiver or relinquishment for the future of such covenant or option. In fact, no waiver, change, modification or discharge by either party hereto of any provision of this

{067.00190825.2}

COSA 000409



Agreement shall be deemed to have been made or shall be effective unless expressed in writing and signed by the party to be charged. In case of City, such changes must be approved by the City Council, as described in Article XVI. Amendments. No act or omission by a Party shall in any manner impair or prejudice any right, power, privilege, or remedy available to that Party hereunder or by law or in equity, such rights, powers, privileges, or remedies to be always specifically preserved hereby.

### XX. LAW APPLICABLE & LEGAL FEES

20.1   **THIS AGREEMENT SHALL BE CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND ALL OBLIGATIONS OF THE PARTIES CREATED HEREUNDER ARE PERFORMABLE IN BEXAR COUNTY, TEXAS.**

20.2   Any legal action or proceeding brought or maintained, directly or indirectly, as a result of this Agreement shall be heard and determined in the City of San Antonio, Bexar County, Texas.

20.3   The Parties hereto expressly agree that, in the event of litigation, each party hereby waives its right to payment of attorneys' fees.

### XXI. LEGAL AUTHORITY

The signer of this Agreement for Contractor represents, warrants, assures and guarantees that he has full legal authority to execute this Agreement on behalf of Contractor and to bind Contractor to all of the terms, conditions, provisions and obligations herein contained.

### XXII. PARTIES BOUND

This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, and successors and assigns, except as otherwise expressly provided for herein.

### XXIII. CAPTIONS

The captions contained in this Agreement are for convenience of reference only, and in no way limit or enlarge the terms and/or conditions of this Agreement.

### XXIV. ENTIRE AGREEMENT

This Agreement, together with its authorizing ordinance and its exhibits, if any, constitute the final and entire agreement between the parties hereto and contain all of the terms and conditions agreed upon. No other agreements, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or to bind the parties hereto, unless same be in writing, dated subsequent to the date hereto, and duly executed by the parties, in accordance with Article XVI. Amendments.

### XXV. PROHIBITION ON CONTRACTS WITH COMPANIES BOYCOTTING ISRAEL

25.1   Texas Government Code §2270.002 provides that a governmental entity may not enter into a contract with a company for goods or services, unless the contract contains a written verification from the company that it:

      (1)  does not boycott Israel; and
      (2)  will not boycott Israel during the term of the contract.

25.2   "Boycott Israel" means refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial Brelations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory, but does not include an action made for ordinary business purposes.

{067.00190825.2}

COSA 000410



25.3    "Company" means a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company, or affiliate of those entities or business associations that exists to make a profit.

25.4    By submitting an offer to or executing contract documents with the City of San Antonio, Company hereby verifies that it does not boycott Israel, and will not boycott Israel during the term of the contract. City's hereby relies on Company's verification. If found to be false, City may terminate the contract for material breach.

EXECUTED and AGREED to as of the dates indicated below.

**CITY OF SAN ANTONIO**                          **VAULT FINE ART SERVICES, LLC**

_____                  Vault Fine Art Services LLC
Lori Houston                                     Robert Boland, Manager
Assistant City Manager                           _____
City of San Antonio                              By: Robert Boland
                                                 Title: CEO
8/31/17
_____
Date                                             _____8/31/17_____
                                                 Date

APPROVED AS TO FORM:

_____
City Attorney

{067.00190825.2}

COSA 000411

82

## AMENDMENT TO
## PROFESSIONAL SERVICES AGREEMENT

This amendment is entered into by and between the City of San Antonio, a Texas Municipal Corporation, (hereinafter referred to as "City"), pursuant to an Ordinance passed and approved on August 31, 2017, and the Vault Fine Art Services LLC ("Contractor"), both of which may be referred to herein collectively as the "Parties".

**WHEREAS,** the City entered into an agreement with Contractor for the removal of the monument and cannons located at Travis Park, as well as transportation of the monument and cannons to a storage facility, and logistical support necessary for the removal and relocation of the monument and cannons; and

**WHEREAS,** the initial estimate for services has been revised to reflect a new total amount that is still within the amount authorize by the San Antonio City Council to perform the services set out above; and

**WHEREAS,** the City has determined that the amount of $147,775.00 should be paid to Contractor, and that the revised final invoice should be made a part of the Agreement; and

**WHEREAS,** the Parties have agreed to the amendment of the Agreement; **NOW THEREFORE:**

City and Contractor agree to amend the Agreement as follows:

1. Attachment I of the Agreement is deleted in its entirety and replaced with Exhibit I, attached to this Amendment.

2. Article IV of the Agreement is amended by deleting Section 4.1 in its entirety and replacing it with the following language:

   4.1 In consideration of Contractor's performance in a satisfactory and efficient manner, as determined solely by the Manager, of all services and activities set forth in this Agreement, City agrees to pay Contractor a total amount not to exceed ONE HUNDRED FORTY SEVEN THOUSAND SEVEN HUNDRED SEVENTY FIVE DOLLARS AND NO/100THS ($147,775.00) as total compensation.

3. All other terms, conditions, covenants and provisions of the Agreement are hereby continued and shall remain in effect in their original form, except for the provisions modified by this Amendment.

4. This Agreement may be executed in several counterparts by the Parties hereto and each counterpart, when so executed and delivered, shall constitute an original instrument and such separate counterparts shall constitute but one and the same instrument.

COSA 000412



EXECUTED IN DUPLICATE ORIGINALS, EACH OF WHICH SHALL HAVE THE FULL
FORCE AND EFFECT OF AN ORIGINAL, this the 30th day of September, 2017.

City:
**CITY OF SAN ANTONIO**

Lori Houston
Assistant City Manager

Contractor:
**VAULT FINE ART SERVICES, LLC**

By: _Patrick Sheeley_
Title: _Principal / Project manager_

COSA 000413

*84*



**Vault Fine Art Services LLC.**
PO Box 17756
Austin, TX  78760
(866) 676-9384
info@vaultfas.com

# INVOICE

**BILL TO**
Lori Houston
City of San Antonio
100 Military Plaza
San Antonio, TX  78205

**INVOICE #** 034751A
**DATE** 09/15/2017
**DUE DATE** 10/30/2017
**TERMS** Net 15

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
| --- | --- | --- | --- | --- |

COSA 000414

85

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/31/2017 | Art Installation:Institutional Art Installation<br>Vault Fine Art Services will reserve and have delivered the necessary equipment to remove the confederate statue from Travis Park. The equipment will be delivered the morning of August 31 to an offsite location a few blocks from Travis Park.<br><br>When the job starts, both pieces of equipment will be driven to the park, where removal of the soldier will begin. The statue and two cannons will be placed upon the flatbed trailer and made ready for travel, covered and protected. In addition, Vault will remove the base structure pieces underneath the statue, garland-covered fluted base, and the first four steps of the platform with step one being the step immediately below the first base. Additional stonework has been added to the job.<br><br>Vault will arrive at a yet to be determined time on August 31. The set up of the crane will take approximately one hour. Vault will position our equipment and proceed to begin working on the rigging of the statute, as it will be the first piece to be removed. Pieces will be transported on a flatbed trailer to an offsite location to be determined by the City, where Vault will then offload the pieces from the flatbed inside the facility. | 1 | 142,655.00 | 142,655.00 |
| 09/08/2017 | Art Installation:Institutional Art Installation<br>Additional work to box statue pieces at ITC | 1 | 5,120.00 | 5,120.00 |

Thank you for your business!

BALANCE DUE                    **$147,775.00**

COSA 000415



36

## Confederate Monument Removal in Travis Park

**CCDO**

| | | |
|---|---|---:|
| Soil | $ | 1,250 |
| Plants | $ | 2,000 |
| Forklift Rental | $ | 370 |
| Staff Overtime | $ | 3,476 |
| CCDO Subtotal | $ | 7,096 |

**Police Department**

| | | |
|---|---|---:|
| SAPD Overtime Subtotal (8/31 and 9/1) | $ | 85,976 |
| Park Police | $ | 4,271 |
| Surveillance Cameras | $ | 2,300 |
| Fencing | $ | 5,838 |
| Bike Racks | $ | 1,540 |
| Barricades | $ | 3,884 |
| SAPD Subtotal | $ | 103,809 |

**Vault Fine Art Services**

| | | |
|---|---|---:|
| Statue removal, transport, and storage preparation | $ | 147,775 |
| Subtotal | $ | 147,775 |

| | |
|---|---:|
| **TOTAL EXPENSES** | 258,680 |

BEXAR COUNTY                          §
                                     §
STATE OF TEXAS                       §
                                     §

## AFFIDAVIT OF RICHARD BREWER

Before me, the undersigned notary, on this day did personally appear RICHARD BREWER, affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Richard Brewer. I am competent to make this verification. The facts stated within it are within my personal knowledge and are true and correct.

I am a resident of the City of San Antonio, Texas.

I pay property tax on residence in San Antonio, Texas.

The documents attached to this affidavit are part of the affidavit and prove my residence in San Antonio, Texas, and payment of property taxes there."

Richard Brewer
_____
Richard Brewer

SWORN TO and SUBSCRIBED before me by Richard Brewer on August 13, 2018.


_____
Notary Public in and for
The State of Texas

LANA S. SUSEN
Notary Public, State of Texas
My Commission expires
December 2, 2020
ID # 12513387-1

88



 **ALBERT URESTI, MPA,PCC**
**BEXAR COUNTY TAX ASSESSOR-COLLECTOR** 

TAX HOME    TAX ASSESSOR    OFFICE LOCATIONS    PROPERTY TAXES    VEHICLE REGISTRATIONS    BEER & LIQUOR PERMITS    BEXAR HOME

*Shopping Cart*

## Property Tax Balance

Begin a New Search    Go to Your Portfolio

*Make your check or money order payable to:*
*ALBERT URESTI, MPA, PCC*
*BEXAR COUNTY TAX ASSESSOR-COLLECTOR*
*P O BOX 839950*
*SAN ANTONIO, TX 78283-3950*

Unless otherwise noted, all data refers to tax information for 2017. All amounts due include penalty, interest, and attorney fees when applicable.

Account Number: **182150010020**

Address:
BREWER RICHARD R & FERN L
3302 BLACKSTONE RUN
SAN ANTONIO, TX 78259-2615

Property Site Address:
3302 BLACKSTONE RUN
78259

Legal Description:
NCB 18215 BLK 1 LOT 2 TERRACES @ ENCINO
PRK UT-1

Current Year Tax Levy: $6,169.58

Current Year Amount Due: $0.00

Delinquent After: 01/31/2018

Prior Year Amount Due: $0.00

Total Amount Due: $0.00

Last Payment Amount for Current Year Taxes: $6,169.58

Last Payer for Current Year Taxes:
LOANCARE LLC

Last Payment Date for Current Year Taxes: 12/12/2017

Active Lawsuits: None

Show Map

Pending Credit Card or eCheck Payments:
No Payment Pending

**Print Current Tax Statement**

**Register for Certified Statements by E-Mail**

Total Market Value: $346,510

Land Value: $71,160

Improvement Value: $275,350

Capped Value: $0

Agricultural Value: $0

Exemptions (current year only):
HOMESTEAD
OVER 65
DISABLED VETERAN

Jurisdictions (current year only):
ALAMO COMM COLLEGE
BEXAR COUNTY
CITY / SAN ANTONIO
FLOOD FUND
HOSPITAL DISTRICT
NORTH EAST ISD
S A RIVER AUTHORITY

Tax Office Home Page

Jurisdiction Details

Payment History

Print Payment Record

Request an Address Correction

90

Property Tax What-If Calculator

Click Here to see your estimated amount due for a different date. You can see this information by year and by both year and jurisdiction.

Terms of Use    Privacy Policy

ALBERT URESTI, MPA, PCC
BEXAR COUNTY
TAX ASSESSOR-COLLECTOR
P O BOX 839950
SAN ANTONIO, TX 78283-3950
(210-335-2251

DISCLAIMER: Appraisal & Collection Technologies provides this World Wide Web (WWW) site information "as is" without warranty of any kind, either expressed or implied. Appraisal & Collection Technologies does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. Appraisal & Collection Technologies, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.
©Appraisal & Collection Technologies. All rights reserved.

91

 

# ALBERT URESTI, MPA, PCC
## BEXAR COUNTY TAX ASSESSOR-COLLECTOR

TAX HOME    TAX ASSESSOR    OFFICE LOCATIONS    PROPERTY TAXES    VEHICLE REGISTRATIONS    BEER & LIQUOR PERMITS    BEXAR HOME

*Shopping Cart* 

## Payment Information

Begin a New Search    Go to Your Portfolio

Return to the Previous Page

**Account No.:** 182150010020

| Receipt Date | Roll Year | Amount | Description | Payer |
|---|---|---|---|---|
| 2017-12-12 | 2017 | $6,169.58 | Payment | LOANCARE LLC |
| 2016-12-27 | 2016 | $6,179.40 | Payment | PHH MORTGAGE |
| 2015-12-21 | 2015 | $6,110.03 | Payment | PHH MORTGAGE |
| 2014-12-22 | 2014 | $6,264.16 | Payment | PHH MORTGAGE |
| 2013-12-31 | 2013 | $6,226.58 | Payment | PHH MORTGAGE |
| 2012-12-11 | 2012 | $6,197.39 | Payment | PHH MORTGAGE |
| 2012-07-25 | 2011 | ($35.24) | Refunded | WELLS FARGO HOME MTGE (HK) |
| 2011-12-22 | 2011 | $6,187.21 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2011-07-14 | 2010 | ($1,165.08) | Refunded | WELLS FARGO HOME MTGE (HK) |
| 2011-06-20 | 2009 | ($1,096.80) | Refunded | WELLS FARGO HOME MTGE (HK) |
| 2011-06-17 | 2008 | ($212.35) | Refunded | WELLS FARGO HOME MTGE (HK) |
| 2010-12-27 | 2010 | $7,317.40 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2009-12-22 | 2009 | $7,214.38 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2008-12-18 | 2008 | $7,430.08 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2007-12-26 | 2007 | $7,007.70 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2007-01-08 | 2006 | $7,068.74 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2005-12-30 | 2005 | $6,871.80 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2004-11-05 | 2004 | $7,011.21 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2003-11-06 | 2003 | $6,930.23 | Payment | WELLS FARGO HOME MTGE (HK) |
| 2002-10-29 | 2002 | $6,772.10 | Payment | CENLAR FEDERAL SAV BNK 5H/42 |

about:blank

92

| 2001-10-31 | 2001 | $6,295.68 | Payment | TRANSAMERICA R E TAX 42 |
| 2001-01-31 | 2000 | $555.86 | Payment | CENTEX HOMES |
| 2000-01-21 | 1999 | $489.59 | Payment | LAR-SAT PARTNERS LTD |

Terms of Use    Privacy Policy

ALBERT URESTI, MPA, PCC
BEXAR COUNTY
TAX ASSESSOR-COLLECTOR
P O BOX 839950
SAN ANTONIO, TX 78283-3950
(210-335-2251

**DISCLAIMER:** Appraisal & Collection Technologies provides this World Wide Web (WWW) site information "as is" without warranty of any kind, either expressed or implied. Appraisal & Collection Technologies does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. Appraisal & Collection Technologies, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

©Appraisal & Collection Technologies. All rights reserved.



**TATTI**

✦ ART CONSERVATION ✦

117 East 39th Street
New York, NY 10016
Phone: (212) 867-8866 Fax: (212)983-6252

Info@TattiArtConservation.com
www.TattiArtConservation.com

<u>Condition Report, Travis Park Monument, San Antonio, Texas</u>



94

On September 1-2, 2017, the Travis Park Monument, a cenotaph, constructed in 1898, was dismantled and removed from Travis Park in San Antonio, Texas.

Masterpiece Fine Art Services was the contractor for the removal of the monument and two cannons from Travis Park.  The disassembled granite monument and two cannons were removed to a discrete location.

On July 10, 2018, sculpture conservator, Robert Pringle, accompanied by Lawyer, David Vandenberg, three members of the Texas division of the Sons of the Confederacy, Inc. and a representative of the City Attorney's office visited the storage site.

The purpose of the visit was to provide an inventory and condition assessment of the stone monument parts and the two cannons.

The granite monument is constructed from what appears to be a light gray Vermont granite with a honed finish.  The column is a medium gray granite with a polished surface.

All stone items were intact and accounted for with the exception of the end of the rifle barrel exiting the soldier's hand on the statue.

The monument is a "dry stack" construction with a slip line of mortar between the blocks.  The three column sections were seated at the edges with a 1/8" thick strip of lead.

The central cavity in the steps below the plinth was originally filled with mortar and rubble.

The rifle was previously broken and repaired.  The rifle was carved separately and inserted through a hole in the hand of the soldier.

It appears that at some time in the past, the rifle slipped out of the hand and was broken into two or three pieces.

There is a previously repaired break in the gun at 32" up the rifle that shows yellowed epoxy resin.

On the butt of the rifle where it rests at the soldier's feet and where the rifle barrel enters the soldier's hand, there is poorly applied dark gray epoxy paste (possibly PC-7) to secure the rifle to the statue.

The clean break at 47" up the gun, where the barrel is missing, shows a bit of adhesive residue indicating that this also was possibly a prior repair.  There is no evidence of pinning at this break.

There are drafted Lewis holes cut into the top of all of the heavier blocks that were used to hoist the blocks with Lewis pins in the original construction. Masterpiece chose not to use them and, instead, drilled four holes in the top of each stone (non visible after reconstruction) and set stone anchors and bolts for lifting the stone blocks.

There is a time capsule consisting of a tin box mortared into a hole in the top of the cornerstone.

2

95

The lid of the box was decayed and collapsed into the time capsule. The contents were not disturbed, but we could see bits of paper and glass inside of the time capsule.

All of the raised carved lettering ("Lest we forget our Confederate dead") is in excellent condition.

All of the raised carving (wreath and garlands) is in excellent condition, with the exception of the minor damage listed below the arrises and faces of the stone blocks are in good condition.

On the plinth cap stone (with the wreath) there are three minor spalls (1" x 1", 1" x 1", 1 3/4" x 1") along the lower edge of the stone block.

On the plinth base (stylobate) there are two spalls along the lower edge (2" x 3/4" and 1" x 1"). All of the spalling is approximately 1/8" deep.

The soiling in the spalls matches the surrounding stone, suggesting this might be prior damage.

On one of the step blocks on the monument there is a cut line on the lower edge that is 1/4" high and approximately 3" long.

Overall, with the exception of the missing end of the rifle barrel, the monument is in good condition.


Cannons

Both cannons are model 1857 Napoleon 12 Pounder cannons with naval brass barrels. Both cannons have cast reproduction carriages.

One cannon is marked with serial numbers 126 on the muzzle and 89 on the trunnion base.

The other cannon has serial number 287 on the muzzle and 303 on the trunnion base.

Both cannons have been well maintained and are in good condition with the exception of some minor loss of paint on the wheel spokes.

96

rick, A. G. Grohn,
. Carr, Dr. J. H.
sher, G. C. Clump,
A. Goeth, H. E.
'red Wells and E.

cad Connell Jurix.
at W. O. W. pic-
'une 6th.

✤ ✤ ✤ ✤ ✤ ✤ ✤ ✤
✤
**BURIALS.** ✤
✤
✤ ✤ ✤ ✤ ✤ ✤ ✤ ✤

.nn Crim.
dia Ann Crim, who
:o street, was fur-
i to Hot Springs,
panied by her hus-
:s. Crim was born
ue to San Antonio
r her health.

rence Beard.
rrence Beard will
umily residence on
his afternoon at 4
ll be made in the

:RA, N, Phone 374.

**LBORRULING.**

Gazette.
uue 3.—The so-
Carolina has hand-
rtant decision re-
nacted child labor
e court holds that
o legislate for the
i in a way para-
lar rights of the
w regulating child
turies is properly
vers of the state
d also as the em-
uder nge is an in-
et of any one em-
tion of such law
im for negligence
· any child so em-
injury he during
he specific duties
employed or not.

phone to this of-
when earrier fails
r this means the
l by special mes-
(tf)

that Vollmer assaulted John Mussey
with a pistol, beating and bruising him.

---

W. O. W. picnic, Landa's Park, June
6th. Artzt's music. Trains 9 a. m. and
1:30.

---

# HOUSTON PROPERTY
## SELLS FOR $60,000

William Clemens of New Braunfels
has bought forty-six feet fronting on
Houston street, near the intersection of
Losoya street.    A one-story building
occupied by a book store and a saloon
is on the property at the present time.
The consideration was $60,000. It is
understood that the purchaser will erect
a two-story building on the property.

---

W. O. W. picnic. Landa's Park.
June 6th. J. Ira Kercheville, orator of
the day.

---

# TROPHIES OF WAR
# COME TO CITY
# AS SOUVENIRS

Mayor Callaghan received a letter
from Congressman Slayden this morning
announcing that a bill introduced by
him providing for the appropriation of
two bronze cannon for the San Antonio
Confederate monument had been passed.
As the Confederate Monument asso-
ciation is not incorporated, the war de-
partment will present the cannon to the
city.

The cannon are trophies of the civil
war and were used by the Confederate
soldiers. They are equipped with their
carriages and caissons and will make a
fine appearance in Travis park near the
Confederate monument.    City Clerk
Fues addressed a letter to the war de-
partment this morning, asking what
steps must be taken to transport the
relics to this city.

San Antonio Gazette

June 3, 1906

COSA 000077

97